**ILLINOIS CENTRAL GULF RAILROAD COMPANY, Plaintiff-Appellee,**

v.

**SOUTHERN ROCK, INC., Defendant-Appellant.**

No. 79–2162.

United States Court of Appeals, Fifth Circuit.

May 14, 1981.

Reynolds & Mockbee, David W. Mockbee and David L. Reynolds, Jackson, Miss., for defendant-appellant.

Wise, Carter, Child, Steen & Caraway, Charles T. Ozier and Joseph P. Wise, Jackson, Miss., for plaintiff-appellee.

Before VANCE and GARZA, Circuit Judges, and ALLGOOD *, District Judge.

VANCE, Circuit Judge:

Appellee Illinois Central Gulf Railroad Company brought this suit under the Interstate Commerce Act, 49 U.S.C. §§ 1 et seq.[1] to recover demurrage charges allegedly owed by appellant Southern Rock, Inc.

---

* District Judge of the Northern District of Alabama, sitting by designation.

1. The Interstate Commerce Act was revised and codified as 49 U.S.C. §§ 10101 et seq., effective September 14, 1978. Pub.L.No.95–473, 92 Stat. 1337 (1978). None of the changes in the Act affect the issues before us. Since this action was brought before the new codification was enacted, and most of the decisions we discuss also predate it, we shall for convenience cite to the older version.

Southern Rock counterclaimed, alleging that Illinois Central had failed to deliver railroad cars to Southern Rock on schedule and that it had suffered damages from resulting delays in construction projects. The case was tried before a jury. At the close of evidence, the district court granted Illinois Central's motion for directed verdict on both the claim and the counterclaim. We affirm as to the counterclaim but reverse and remand for a new trial on the issue of the demurrage charges.

During July and August 1976, Illinois Central shipped 394 carloads of rip rap stone consigned to Southern Rock at Oakland, Mississippi. Southern Rock unloaded the stone at Oakland and transported it from there to a construction site. Of the 394 cars, 269 came from Kentucky and were carried exclusively by Illinois Central. The other 125 cars came from Alabama and were picked up by Illinois Central at Winona, Mississippi.

Under the applicable tariff (Supplement 73 to Freight Tariff 4–J) Southern Rock had 48 hours of free time following actual. or constructive placement of each car in which to unload it. The Tariff provided that after the 48 hour period, daily demurrage charges would be assessed until the cars were released. On November 19, 1976, Illinois Central sent Southern Rock a bill for demurrage of $29,390. On December 6, 1976, Southern Rock responded that it considered the demurrage charges improper, stating that the delays in unloading had resulted from improper supply, moving, and placing of cars by the railroad.

At trial, Southern Rock attempted to introduce evidence tending to show that delays in unloading the cars resulted from the railroad's negligence in supplying cars for unloading. As a result of this alleged negligence fewer cars were delivered to Southern Rock on some days than it was capable of unloading. According to Southern Rock, at least part of the demurrage stemmed from the failure to provide a steady flow of cars in the quantity ordered. It contended that such demurrage charges were improper under Rule 8–E of the Tariff.[2] Rule 8–E provides that a carrier may not collect demurrage charges resulting from the "[e]rror of any railroad named in the bill of lading contract or participating in the transportation transaction, which prevents acceptance, proper tender or delivery." The trial court, however, ruled that "error" under Rule 8–E did not encompass negligence and refused to admit evidence bearing upon possible negligence by Illinois Central.

We are cited to no cases that support this broad proposition and our research has discovered none. On the contrary, the general rule has been stated to be that a consignee is not responsible for demurrage "where the delay is the fault of the carrier or those for whom he is responsible . . . ." *Pennsylvania Railroad v. Moore-McCormack Lines, Inc.*, 370 F.2d 430, 432 (2d Cir. 1966). "Demurrage is part compensation and part penalty to secure the release of equipment and tracks." *Illinois Central Railroad v. Texas Eastern Transmission Corp.*, 533 F.2d 272, 275 (5th Cir. 1976), *vacated in part*, 551 F.2d 943 (5th Cir. 1977). We are given no reason why Rule 8–E should be construed so as to permit carriers to exact penalty and compensation for delays in unloading that result from their own negligence. We believe instead that the term "error" as used in Rule 8–E is not a word of art and is to be read according to its plain and ordinary meaning as encompassing mistakes made negligently.

Illinois Central relies heavily on *Union Pacific Railroad v. Bartlett & Co.*, 393 F.Supp. 1347 (W.D.Mo.1975), one of the few

---

**2.** At trial, Southern Rock also sought to claim a credit against demurrage because of alleged "bunching" of cars by the railroad. Credit for bunching is specifically authorized by Rule 8–B. This rule also requires that notice of the bunching claim be given to the railroad within 30 days of the bill for demurrage supported by a statement showing the date and point of shipment of each car involved in the bunching claim. Since no such supporting statement was given the railroad, the claim was waived. *See Port Terminal Railroad Association v. Connell Rice & Sugar Co.*, 387 F.2d 355, 357 (5th Cir. 1967) (finding compliance with a similar notice requirement a condition precedent to obtaining a reduced demurrage rate).

cases specifically interpreting Rule 8–E. *Bartlett* in no way suggests, however, that a railroad should be able to charge for delays resulting from its negligence. That case holds only that a shipper may not avoid demurrage charges when it fails "to prove that it had actual ability to have unloaded additional cars even if they had been placed." *Id.* at 1355. *Bartlett* thus deals with the issue of causation as do a number of decisions of the Interstate Commerce Commission cited by Illinois Central. While these cases do not speak to the question of whether "error" in Rule 8–E encompasses negligence, they strongly indicate that a carrier may not be permitted to recover demurrage incurred from its own failure to act in a reasonable manner. We find persuasive the statement of the Commission in *National Trucking & Storage Co. v. Pennsylvania Railroad*, 270 I.C.C. 539, 544 (1948) *modified* 277 I.C.C. 109 (1950), *modified* 283 I.C.C. 395 (1951), *aff'd in part and rev'd in part*, 228 F.2d 23 (D.C.Cir.1955) that

> ■n a situation such as is here present, it is the primary duty of the carrier to place cars, on which demurrage time is running, upon the consignee's siding whenever, during the ordinary and usual switching time of that area, space for such placement is available . . . . Obviously, defendant should not be permitted to profit through its own error.

■ Illinois Central argues that Southern Rock was unable to unload the cars actually delivered to it so that no demurrage resulted from any failure to supply cars on schedule. It is impossible to determine from the record to what extent pile-ups at the unloading site resulted from the alleged negligence of the railroad itself. Evidence on this point, along with any other evidence concerning Illinois Central's alleged negligence, was excluded by the trial court because of its erroneous interpretation of Rule 8–E. Similarly, because it is unclear to what extent the railroad's error produced delays in unloading, the record cannot support Southern Rock's claim that it was entitled to a directed verdict.[3]

■ The only damages sought in Southern Rock's counterclaim were consequential damages. We think that the issue was largely resolved by our discussion of consequential damages under the Carmack Amendment[4] in *Hector Martinez & Co. v. Southern Pacific Transportation Co.*, 606 F.2d 106 (5th Cir. 1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980). In that case we held that the Carmack Amendment permitted damages for the loss of use of equipment delayed in transport. We found that such damages were foreseeable under the line of cases originating with *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1854) stating the law of consequential damages. We observed, however, that the plaintiff "would have had to plead notice had he sought to recover for a variety of damages that could not have been foreseeable here such as lost profits, the cost of idle labor . . . [or] the cost of idle equipment . . . ." 606 F.2d at 109 n.7. Since Southern Rock was not seeking damages resulting from loss of use, it was incumbent upon it to show notice to Illinois Central. Southern Rock concedes that no such notice was given. The directed verdict as to its claim for consequential damages was therefore proper.

---

3. Illinois Central also contends that Rule 8–E does not in any case cover errors in supply, transport or delivery because the rule covers only the errors "of any railroad named in the bill of lading contract or participating in the transportation transaction, which prevents *acceptance, proper tender or delivery*" (emphasis added). The thrust of this argument seems to be that the error must have occurred at or near the point of delivery to fall within Rule 8–E. This interpretation is overly restrictive, however, in light of the language referring to "any railroad . . . participating in the transportation transaction . . . ."

4. The Carmack Amendment as effective at the time, 49 U.S.C. § 20(11) provided that any common carrier subject to the provisions of the Interstate Commerce Act who received property for transportation in interstate commerce was liable for damages it caused in the amount of "the full actual loss, damage or injury" suffered. The new codification states that "liability . . . is for the actual loss or injury to the property . . . ." 49 U.S.C. § 11707(a)(1). However, the change in wording "may not be construed as making a substantive change in the laws replaced." Interstate Commerce Act, Pub.L.No.95–473, § 3(a), 92 Stat. 1466 (1978).

■ Two remaining matters may be dealt with briefly. Southern Rock suggests that Illinois Central failed to mitigate its damages, by which it apparently means that the railroad improperly delayed in informing Southern Rock of the accruing demurrage so that Southern Rock was unable to take corrective action. Whatever the merits of the legal theory behind this claim, it fails because Southern Rock had actual knowledge that demurrage charges were accruing during the time in question.

■ Finally, we note that the district judge was properly concerned that the jury be given some guidelines by which to determine a possible credit against demurrage. We caution, however, that "Rule 8–E–1 ordering computation of demurrage which would have been charged but for the Railroad error can be carried out only by estimate and approximation. No formula can reduce it to certainty." *National Trucking & Storage Co. v. Pennsylvania Railroad*, 228 F.2d 23, 28 (D.C.Cir.1955). In a case such as the present one, the defendant need not prove with exact precision the extent to which the railroad's error resulted in delay.

AFFIRMED in part, REVERSED and REMANDED in part.