**BONANNI SHIP SUPPLY, INC.,**
**Plaintiff–Appellant,**

**v.**

**UNITED STATES of America, as owner of U.S.N.S. RIGEL, its engines, tackle, apparel, etc., in rem, M/V PAUL BUNYON, its engines, tackle, apparel, etc., in rem, Defendants–Appellees.**

**Nos. 90–4085, 91–3267.**

United States Court of Appeals,
Eleventh Circuit.

May 7, 1992.

Jack C. Rinard, David F. Pope, MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for plaintiff-appellant.

Robert Genzman, U.S. Atty., Karla Spaulding, Warren A. Zimmerman, Asst. U.S. Attys., U.S. Attorney's Office, Tampa, Fla., for defendants-appellees.

Before KRAVITCH and EDMONDSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

In this admiralty case, plaintiff-appellant Bonanni Ship Supply, Inc. filed suit to recover money allegedly owed Bonanni by the defendant-appellee United States for repair services on a U.S. naval vessel, and sought to impose a maritime lien on that vessel under the Maritime Commercial Instruments and Liens Act ("MCILA"), codified at 46 U.S.C.A. § 31301–31343 (West Supp.1991). The district court granted the United States' motion to dismiss or, in the alternative, for summary judgment, and denied Bonanni's motion to vacate the judgment. Bonanni appeals both these rulings, claiming that, contrary to the district court's conclusion, the MCILA does not preclude the enforcement of a maritime lien for repairs on a public vessel. We agree with Bonanni that the MCILA does not *per se* preclude the imposition of a maritime lien on a public vessel; we affirm the district court's decision, however, because Bonanni failed to sustain its burden on summary judgment of proving that it was a maritime lienor entitled to relief under the MCILA.

## I. BACKGROUND

The USNS RIGEL is a public vessel owned by the United States and operated by the United States Navy's Military Sealift Command, Atlantic ("MSC Atlantic") in Bayonne, New Jersey.[1] To maintain ships such as the RIGEL, the Government contracts with private shipyards for repair services. Each shipyard seeking to provide such services must enter into a master contract with the Government; specific re-

pairs to particular vessels are governed by job orders issued by MSC Atlantic pursuant to a competitive bidding process to a shipyard possessing a master contract. Gulf–Tampa Dry Dock Company ("Gulf–Tampa") possessed such a master contract, No. N000033–85–H–0371.

On August 28, 1987, MSC Atlantic, through its contracting officer, Arthur Amses, issued Job Order No. N62381–87–JO–002 to Gulf–Tampa for certain repairs to the USNS RIGEL. Item 608 of the job order called for Gulf–Tampa to inspect, test, repack and arrange for Coast Guard certification of the RIGEL's 10 life rafts. Gulf–Tampa's bid on this item was for $5,410, and listed no subcontractor to perform any work on the RIGEL's life rafts. Bonanni, however, performed the work required in Item 608. The parties stipulated that no written contract existed between Bonanni and the United States regarding work to be done on the RIGEL. They also stipulated that no verbal agreement existed regarding any such work, and that none of the Government officers authorized to direct contractors or subcontractors to furnish any work on the RIGEL had so directed Bonanni.[2] There is no evidence in the record as to whether or not the Government was aware of Bonanni's performance, or whether or not the Government directly inspected Bonanni's work or otherwise gave its tacit approval to Bonanni's actions either prior to or after completion of work on the RIGEL.

Gulf–Tampa successfully completed the job order and was paid in full by the contracting officer. Bonanni subsequently submitted an invoice to "USNS RIGEL c/o Gulf–Tampa Dry Dock" in the amount of $10,606.21. The Government refused to pay Bonanni for its work on the RIGEL's life rafts; Gulf–Tampa also apparently has refused to pay Bonanni for its work.[3]

---

1. The RIGEL is indisputably a "public vessel" under the MCILA. *See* 46 U.S.C.A. § 30101(3).

2. The Government officers authorized to engage the services of Bonanni or any other contractor were Arthur Amses, the RIGEL's contracting officer, Cap. Karl Popp, the Master of the RI-

GEL, and Larry Zuchowski, the RIGEL's Port Engineer.

3. It is unclear whether a written subcontracting agreement existed between Gulf–Tampa and Bonanni. In any event, Gulf–Tampa has filed for

Bonanni then filed a "Complaint *In Rem*" against the United States as owner of the USNS RIGEL, alleging subject matter jurisdiction pursuant to the Suits in Admiralty Act ("SAA"), 46 U.S.C.App. §§ 741–752.[4] Bonanni alleged that it had furnished supplies, repairs and other necessaries to the RIGEL, for which items there was then due and owing $10,606.21. Plaintiff specifically asserted a maritime lien against the RIGEL.[5]

The Government moved to dismiss Bonanni's complaint on substantive and jurisdictional grounds or, in the alternative, for summary judgment. The Government argued that section 102 of the MCILA,[6] 46 U.S.C.A. § 31342, upon which Bonanni's lien theory of recovery was based, precluded the imposition of maritime liens on public vessels and therefore deprived Bonanni of a cause of action against the United States based on *in rem* principles. The Government also contended that even if section 102 of the MCILA did not foreclose Bonanni's action on account of the RIGEL's status as a public vessel, plaintiff was not a maritime lienor entitled to relief under that section because it had not provided necessaries or services to the vessel on the order of the owner or a person authorized by the owner. Finally, the Government contended that plaintiff's failure to exhaust administrative remedies as required by the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601–613, deprived the district court of subject matter jurisdiction over the case and therefore mandated dismissal or summary judgment in favor of the Government.

The United States District Court for the Middle District of Florida granted the Government's motion. *Bonanni Ship Supply v. United States*, case no. 89–1132–CIV–T–17(B) (M.D.Fla. September 26, 1990) (hereinafter "September 26 Order"). The court agreed with the Government that section 102 of the MCILA did not support recovery by Bonanni on *in rem* principles. The court held that the only recourse available to an admiralty plaintiff in Bonanni's position was an *in personam* action on a contract with the Government, and that the absence of a contractual relationship between Bonanni and the United States foreclosed that option in this case. The court entered judgment in favor of the Government on September 27, 1990.

Bonanni then moved to vacate the district court's judgment, arguing that this court's decision in *Stevens Technical Services, Inc. v. United States*, 913 F.2d 1521 (11th Cir.1990), mandated that the district court's judgment against Bonanni be set aside. The district court denied Bonanni's motion on the grounds that the recodification of existing commercial maritime law in the MCILA rendered *Stevens Technical* inapplicable. *Bonanni Ship Supply*, case no. 89–1132–CIV–T–17(B) (M.D.Fla. January 18, 1991). Bonanni appeals both the district court's order granting summary judgment against Bonanni (case no. 90–4085) and the district court's denial of Bonanni's motion to vacate the judgment in light of *Stevens, supra* (case no. 91–3267). We have consolidated the two appeals.

bankruptcy protection under Chapter 7, United States Bankruptcy Code.

**4.** The SAA confers federal jurisdiction over suits in admiralty against the United States *in personam*, effecting a waiver of sovereign immunity by the United States in cases where a proceeding in admiralty could be maintained against a privately owned vessel. The SAA thereby creates "a jurisdictional hook on which to hang a claim against the Government." *Williams v. Central Gulf Lines*, 874 F.2d 1058, 1062 (5th Cir.), *cert. denied*, 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 837 (1990) (*quoting Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 444 (5th Cir. 1982)). Bonanni characterizes its claim as an *in personam* action based on principles of *in rem*

liability; the Government concurs with this characterization.

**5.** Bonanni's complaint also alleged that the Government, as owner of another public vessel, the USNS BUNYAN, owed Bonanni money for work the plaintiff performed on that vessel. Bonanni's complaint with respect to the BUNYAN was dismissed with prejudice by agreement of the parties on January 29, 1990. R1–12; R1–14.

**6.** 46 U.S.C.A. §§ 31341–31343 represent a revision of the Maritime Liens Act, 46 U.S.C. §§ 971–975. The MCILA took effect January 1, 1989, before Bonanni filed its complaint.

## II. ANALYSIS

■ Although styled a "Complaint *In Rem*," Bonanni's action against the United States is essentially an action *in personam* against the Government to recover damages through the use of an *in rem* (lien) theory of recovery. The questions before this court are: (1) whether Bonanni's failure to exhaust administrative remedies pursuant to the CDA deprived the district court of subject matter jurisdiction; and (2) whether the MCILA supports an *in personam* action against the United States based on *in rem* principles. We review *de novo* appellee's jurisdictional argument. *Local Union 72 v. John Payne Co., Inc.,* 850 F.2d 1535, 1537 (11th Cir.1988). We also review *de novo* a district court's grant of summary judgment, *Hoffman v. Allied Corp.,* 912 F.2d 1379, 1383 (11th Cir.1990), applying the same legal standards that bound the district court. *Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). We note that this court may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court. *Dandridge v. Williams,* 397 U.S. 471, 475, 90 S.Ct. 1153, 1156, 25 L.Ed.2d 491 (1970); *Greenwood Utilities Commission v. Hodel,* 764 F.2d 1459 (11th Cir. 1985).

### A. The Contract Disputes Act ("CDA")

■ The United States contends as a threshold matter that Bonanni's failure to exhaust administrative remedies under the CDA deprived the district court of its subject matter jurisdiction over this case. In essence, the Government argues that the CDA requires all claims by a Government contractor to be submitted to a contracting officer for decision before the Government waives its immunity from such claims, and that Bonanni's failure to make any submis-

sions to the contracting officer responsible for the RIGEL amounted to a jurisdictional defect and mandated dismissal of the case.

The Government's contention is without merit. Although the CDA provides for a waiver of sovereign immunity from contract claims against the Government based on procurement of services, the SAA and the Public Vessels Act ("PVA"), 46 U.S.C.App. §§ 781–790, which form the jurisdictional basis for Bonanni's suit in this case,[7] also provide for a waiver of sovereign immunity, without requiring that the plaintiff exhaust its administrative remedies. This court addressed this very issue in *Marine Coatings of Alabama v. United States,* rejecting the Government's argument in that case that "the CDA imposes a restrictive limitation on the scope of the SAA's and PVA's waiver of immunity." *Marine Coatings,* 932 F.2d at 1377. The *Marine Coatings* court viewed the jurisdictional grant in the SAA and the PVA as independent of the grant contained in the CDA. The court concluded:

> The ... CDA waive[s] immunity, but there is no need to apply [it] if another method of bringing suit is available.... Though MCI would be precluded from bringing suit for recovery on the *contract* unless it complied with the CDA, the CDA does not supersede admiralty provisions providing for another means of recovery.

932 F.2d at 1376 (emphasis in original). Thus, this court's decision in *Marine Coatings* forecloses the Government's contention that Bonanni's failure to exhaust its administrative remedies under the CDA deprives the district court of jurisdiction over Bonanni's action under the SAA.

### B. Does the MCILA Preclude Imposition of a Maritime Lien on a Public Vessel?

Notwithstanding that the district court had jurisdiction over Bonanni's SAA claim

---

7. Bonanni cited only the SAA as the jurisdictional basis for his action against the United States; however, the provisions of the Public Vessels Act also apply when a suit in admiralty is brought against the United States regarding public vessels. The Public Vessels Act states that suits against public vessels "shall be subject to and proceed in accordance with the provisions

of [the SAA] or any amendment thereof, insofar as the same are not inconsistent herewith." 46 U.S.C.App. § 782. Thus, the Suits in Admiralty Act and the Public Vessels Act must be read together regarding federal jurisdiction over suits in admiralty against public vessels. *Marine Coatings of Alabama, Inc. v. United States,* 932 F.2d 1370, 1373 n. 1 (11th Cir.1991).

despite the appellant's failure to exhaust administrative remedies, the question remains whether the MCILA provides Bonanni with a means of *in rem* recovery against the United States.

As noted *supra* the district court held that Bonanni could not pursue an *in personam* action on principles of *in rem* liability because the MCILA, upon which Bonanni's theory of recovery was based, precluded the enforcement of a maritime lien on a public vessel. The 1988 version of section 102 of the MCILA read as follows:

[a] person providing necessaries to a vessel (except a public vessel) on the order of a person listed in section 31341 of this title or a person authorized by the owner—

(1) has a maritime lien on the vessel;

(2) may bring a civil action in rem to enforce the lien; and

(3) is not required to allege or prove in the action that credit was given to the vessel.

A 1989 technical amendment to the MCILA eliminated the parenthetical portion of the section and added a section (b), which states that "[t]his section does not apply to a public vessel." Thus, the MCILA on its face appears to preclude the imposition of a maritime lien on a public vessel such as the RIGEL.

Appellant contends, however, that this court's decisions in *Stevens Technical Services, supra,* and *Marine Coatings of Alabama, supra,* compel the conclusion that Bonanni could impose a maritime lien on the RIGEL. Bonanni argues that the MCILA merely represents a recodification of existing admiralty law which, as interpreted by this circuit in the aforementioned cases, allows an *in personam* action in admiralty against the United States on principles of *in rem liability.* The Government argues that this court decided *Stevens* and *Marine Coatings* under the former Maritime Lien Act, prior to its recodification as part of the MCILA, and that section 102 of the MCILA makes absolutely

clear Congress' opposition to the imposition of maritime liens on public vessels. Even if this court in *Stevens* and *Marine Coatings* permitted the imposition of a maritime lien on a public vessel under the former Maritime Lien Act, the Government argues, Congress explicitly sought to foreclose that possibility under the MCILA.

In light of these contentions, we must determine, first, whether Congress intended to effect a change in the substantive law regarding maritime liens when it enacted the MCILA, and, second, whether prior to the enactment of the MCILA, this circuit permitted the imposition of a maritime lien on a public vessel under existing maritime law.

### i. *Recodification of the Maritime Lien Act in the MCILA*

The legislative history of section 31342 of the MCILA states that "[t]his section makes *no substantive change to law.* This section does not supersede the prohibition under the Public Vessels Act, the Foreign Sovereign Immunities Act, or the Suits in Admiralty Act, on bringing an *in rem* action against a public vessel." H.Rep. No. 100–918, reprinted at 7 U.S.Code Cong. and Admin.News, 100th Cong., 2d Sess. 6104, 6141 (1988) (emphasis added). *See also id.* at 6107.

In this respect, Congress' treatment in the MCILA of existing admiralty law is similar to the statutory framework encountered by the Fifth Circuit in *Illinois Central Gulf Railroad Co. v. Southern Rock, Inc.,* 644 F.2d 1138 (5th Cir.1981).[8] There, the court addressed the issue of whether the Interstate Commerce Act ("ICA") provided for consequential damages for the loss of use of equipment delayed in transport. In deciding this issue, the court relied on its discussion in *Hector Martinez & Co. v. Southern Pacific Transportation Co.,* 606 F.2d 106 (5th Cir.1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980), which concerned a claim for consequential damages under the

---

**8.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Carmack Amendment to the ICA. The *Illinois Central* court noted that a recent recodification of the ICA had revised the language in the Carmack Amendment, but concluded that because Congress had stated explicitly in the legislative history that the change in wording "may not be construed as making a substantive change in the laws replaced," the court's analysis in *Martinez* controlled its decision under the new provisions of the ICA. *Illinois Central*, 644 F.2d at 1141 n. 4.

Thus, given Congress' explicit directive that section 102 of the MCILA does not purport to change substantive admiralty law, this court's interpretations of that law prior to the enactment of the MCILA, like the Fifth Circuit's interpretation of the old Carmack Amendment in the context of the recodified ICA, binds courts of this circuit interpreting the MCILA. *See infra*, note 10.

### ii. *Stevens and Marine Coatings*

In enacting section 102 of the MCILA, Congress was in essence reasserting what it perceived to be a longstanding rule against the imposition of maritime liens against public vessels, and did not intend to alter legal rights and obligations that had existed under the old Maritime Lien Act. This court in *Stevens* and *Marine Coatings*, however, has rejected the very rule that Congress had perceived to be in force when it enacted the MCILA, and has acknowledged the availability of *in personam* actions against the United States on *in rem* principles of liability. The facts of *Stevens* and *Marine Coatings* are directly analogous to the facts of this case. In each case, a provider of necessaries to a public vessel sued the United States *in personam* on principles of *in rem* liability under the SAA and PVA, seeking to impose a maritime lien on the public vessel under the old Maritime Lien Act. This court held that the applicable law, which Congress sought to reaffirm when it enacted the MCILA, did not preclude such an action.

In *Stevens*, this court examined the scope of the "no lien" clause contained in the PVA, 46 U.S.C.App. § 788. That section states that "[n]othing contained in this chapter shall be construed to recognize the existence of or as creating a lien against any public vessel of the United States," and formed the basis for the rule reasserted in section 31342 of the MCILA. *See supra*, p. 1562. The *Stevens* panel determined that this clause did not bar assertion of a maritime lien for repairs to a public vessel in a suit *in personam* on principles of *in rem* liability. Emphasizing that Congress and the courts had been "liberal in [their] efforts to initiate the widest possible waiver of sovereign immunity for suits against government vessels," *Stevens*, 913 F.2d at 1528, the court concluded that Congress intended the "no lien" clause in the PVA only to preclude actions to seize or arrest vessels of the United States. *Id.* at 1524, 1533.

*Marine Coatings* in essence followed *Stevens*, holding that the PVA's "no lien" clause did not prevent admiralty actions *in personam* against the Government where the plaintiff sought to effect recovery through the imposition of a maritime lien on a public vessel. *Marine Coatings*, 932 F.2d at 1375.

Although Congress may have thought when it enacted the MCILA that existing federal law precluded imposition of a maritime lien on a public vessel, this circuit's interpretations of that law, in particular the "no lien" clause of the PVA, state otherwise. A reading of the MCILA that does not preclude the imposition of a maritime lien against a public vessel, and only prohibits the arrest and seizure of the vessel as a means of effecting recovery against the Government, is both plausible and fully consistent with *Stevens* and *Marine Coatings*.[9]

■ Thus, because Congress did not purport to alter the rights and obligations of

---

9. Such a reading is especially plausible given that the MCILA makes no mention of *in personam* actions on *in rem* principles, explicitly prohibiting only *in rem* actions against public ves-

sels. Thus, there is no more in the MCILA than in the "no lien" clause of the SAA to suggest that Congress intended to prohibit the kind of action brought by Bonanni in this case.

parties under preexisting admiralty law when it enacted the MCILA, and because we are bound to apply this court's interpretations of the preexisting law in *Stevens* and *Marine Coatings* unless otherwise directed by the United States Supreme Court or the Eleventh Circuit en banc,[10] we hold here that the district court erred in interpreting the MCILA to preclude the imposition of maritime liens on public vessels where an admiralty plaintiff sues the United States *in personam* on principles of *in rem* liability.[11]

### C. Was Bonanni A Maritime Lienor Under the MCILA?

■ The United States argues that even if this court's decisions do not *per se* preclude imposition of a maritime lien against a public vessel, Bonanni was not a proper maritime lienor under the MCILA because it did not perform its work at the request of a person authorized to act for the vessel. Bonanni contends that the question as to whether it was a maritime lienor is one of fact, that this court should not affirm the district court's grant of summary judgment on that basis in light of the court's failure to make sufficient findings on that issue and that a remand to the district court for determination of that issue is appropriate. We agree with the United States.

As noted *supra,* the MCILA applies only to "persons providing necessaries to a vessel ... on the order of a person listed in section 31341 of this title or a person authorized by the owner...." Under section 102 of the MCILA, 46 U.S.C.A. § 31341, the "persons presumed to have authority to procure necessaries for a vessel" include: (1) the owner; (2) the master; (3) a person entrusted with the management of the vessel at the port of supply; (4) or an officer or agent appointed by the owner, a charter-er, an owner *pro hac vice* or an agreed buyer in possession of the vessel.

In *Marine Coatings,* this court emphasized that because the presumption created by section 102 is not conclusive, "it is reasonable to conclude that persons falling outside the class of persons presumed to have authority might still have had authority to procure repairs...." *Marine Coatings,* 932 F.2d at 1376. *Marine Coatings* also emphasized that *"prior* authorization by the owner to the party procuring the repairs is not an essential requisite to preserving a lien position.... [A]uthorization, either actual or fairly presumed, given prior to or during performance of the services, or ratified subsequent to the performance will suffice." Id. (emphasis added).

In this case, the plaintiff has alleged the following: (1) that Bonanni Ship Supply furnished to the RIGEL the repairs and supplies required under Job Item 608; and (2) that the Government fully compensated Gulf–Tampa for this work. Bonanni does not allege that the Government in any way authorized its work, or that the Government had any knowledge, constructive, presumptive or otherwise, of such work.

In its Order granting the United States' motion for summary judgment, the district court did not specifically address the issue of whether Bonanni was a proper maritime lienor under the MCILA. The court, however, noted the Government's allegation that neither Mr. Amses, the MSC Atlantic contracting officer responsible for repairs to the RIGEL, nor Karl Popp, the RIGEL's Master, had contracted with or requested that Bonanni provide supplies, repairs or other necessaries to the RIGEL, and that neither of those individuals had authorized any other individual or business entity to

---

10. *United States v. Peppertree Apartments,* 942 F.2d 1555, 1561 n. 3 (11th Cir.1991); *United States v. Thomas,* 916 F.2d 647, 652 n. 6 (11th Cir.1990).

11. The fact that this court decided *Stevens Technical* and *Marine Coatings* after Congress enacted the MCILA does not affect our decision here. *Stevens Technical* and *Marine Coatings* represent interpretations of laws which Congress expressly declined to modify when it enacted the MCILA. It is not the province of this court either to ignore explicit Congressional language, or to decline to follow cases which remain the law of this circuit. Given the clear desire of Congress to exempt public vessels from coverage under the maritime lien provisions of the MCILA, however, reconsideration of the rule announced in *Stevens Technical* and *Marine Coatings* by this court en banc may be in order.

make any such requests of or agreements with Bonanni. The court also noted that "[p]laintiff has not refuted any [sic] defendant's factual statements." September 26 Order at 4.

Under Fed.R.Civ.P. 56, summary judgment is appropriate where there is no genuine issue of material fact. Although a court must resolve all reasonable doubts in favor of the non-moving party, *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir.1987), "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, "the non-moving party ... bears the burden of coming forward with sufficient evidence on *each element* that must be proved." *Earley v. Champion International Corp.*, 907 F.2d at 1080 (11th Cir.1990) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Bonanni fails to sustain its burden of coming forward with sufficient evidence on each element that must be proved. Bonanni in no way suggests that the Government had any knowledge of the work it performed on the RIGEL, maintaining only that because Bonanni performed the work and because the Government ultimately paid for that work, that it was a maritime lienor under the MCILA. Given Bonanni's failure to sustain its burden on summary judgment, affirmance of the district court's decision is appropriate here.

This case is entirely different from *Marine Coatings*. In that case, the court determined that the following facts alleged by the plaintiff created a genuine issue of material fact regarding whether the plaintiff subcontractor was a maritime lienor under the MCILA: (1) two of the three job orders submitted by the prime contractor referenced the plaintiff in a list of subcontractors; (2) the subcontractor performed approximately 40% of the total work on the subject vessels; (3) Government officials were well aware of the subcontractor's presence and directly inspected the subcontractor's work, often in the absence of any representatives of the prime contractor; and (4) Government representatives maintained offices on the prime contractor's premises, and gave provisional and final approval to work performed by the contractor. *Marine Coatings*, 932 F.2d at 1376 n. 9. *See also Stevens Technical*, 913 F.2d at 1534–37. Here, Bonanni has not suggested any facts which similarly would suggest that the Government authorized Bonanni's work on the RIGEL. Although the *Marine Coatings* court also emphasized that the repairs in that case were fully accepted and compensated by the Government, as they were in this case, the mere fact of acceptance and full compensation to the prime contractor, absent any allegation that the Government had any knowledge of *performance by the subcontractor plaintiff,* is insufficient to create a genuine issue of material fact regarding whether the plaintiff was a maritime lienor under the MCILA.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of the United States' Motion to Dismiss or, in the Alternative, for Summary Judgment. We also AFFIRM the district court's denial of Bonanni's Motion to Vacate the Judgment.

EDMONDSON, Circuit Judge, concurs in the result.