Paul Gregory Justice, Savannah, GA, for defendant.

**TURECAMO OF SAVANNAH, INC.**

v.

**UNITED STATES of America.**

**Civ. A. No. CV492–250.**

United States District Court,
S.D. Georgia,
Savannah Division.

June 18, 1993.

### ORDER

ALAIMO, Senior District Judge.

On September 24, 1992, Plaintiff, Turecamo of Savannah, Inc. ("Turecamo"), filed this admiralty and maritime claim, pursuant to the Suits in Admiralty Act ("the SAA"), 46 U.S.C. app. §§ 741–52 (1988), and the Maritime Commercial Instruments and Liens Act ("the MCILA"), 46 U.S.C. §§ 31301–31343 (1988). Turecamo alleges the existence of a maritime lien against a United States Navy vessel as the result of towing services that Turecamo performed. This action is presently before the Court on a motion by Turecamo for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Specifically, Turecamo contends that there are no genuine issues of material fact in dispute and, thus, summary judgment is appropriate as a matter of law. For the reasons discussed below, summary judgment will be GRANTED in favor of Turecamo.

## FACTS

Turecamo, a Georgia corporation doing business in Savannah, Georgia, is engaged in the business of towing oceangoing vessels. (Compl. at 1). Defendant, through the United States Navy, is the owner of the vessel YFNB–33 SEACON, which in November of 1990 was moored in Mayport, Florida. On November 21, 1990, Defendant, through the offices of the Department of Defense, Military Traffic Management Command, entered into a contract with Panocean Marine, Inc. ("PMI"), a Louisiana corporation, to have the YFNB–33 SEACON towed from Mayport, Florida, to the United States naval facility in Portsmouth, Virginia. *Id.* at 2.

To carry out its obligation, PMI, through its parent corporation, Project Logistics and Transportation, Inc. ("Project Logistics"), entered into a contract with Turecamo for the services of Turecamo's tug, the CYNTHIA TURECAMO. *Id.* Turecamo contends, and the Government does not challenge, that the nomination of the CYNTHIA TURECAMO to perform the tow was with the express knowledge and approval of Defendant. *Id.* Accordingly, pursuant to the terms of the United States Government bill of lading number D–1383500, which expressly designates the CYNTHIA TURECAMO as the towing vessel, Turecamo properly towed the vessel to the designated facility in Portsmouth, Virginia, in early December of 1990. *Id.* Turecamo sent Project Logistics an invoice for $55,800 for the towage; however, Turecamo was paid only $20,800 for its services. As such, Turecamo initiated this present case to recover the balance.

In the instant action, Turecamo acknowledges that the existence of a maritime lien against a public vessel under the MCILA is expressly prohibited. 46 U.S.C. § 31342(b) (1988). Nevertheless, Turecamo argues that the language of the MCILA notwithstanding, the Eleventh Circuit has recognized that the MCILA "does not preclude the imposition of maritime liens on public vessels where an admiralty plaintiff sues the United States *in personam* on principles of *in rem* liability." *Bonanni Ship Supply, Inc. v. United States,* 959 F.2d 1558, 1564 (11th Cir.1992). *See also Marine Coatings of Alabama, Inc. v. United States,* 932 F.2d 1370 (11th Cir.1991); *Stevens Technical Servs., Inc. v. United States,* 913 F.2d 1521 (11th Cir.1990). Relying upon this line of cases, Turecamo brings the present *in personam* action, in accordance with principles of actions *in rem,* against the YFNB–33 SEACON, the vessel for which the services have been provided. (Compl. at 3).

In its motion for summary judgment, Turecamo contends that there are no genuine issues of material fact in dispute. Turecamo claims that it provided "necessaries" for the YFNB–33 SEACON by towing the vessel to Portsmouth, Virginia. *See* 46 U.S.C. § 31342 (1988). In addition, Turecamo asserts that Defendant's personnel approved of the use of the CYNTHIA TURECAMO, which is a necessary requirement in order for a subcontractor to pursue an action against the owner. *See* 46 U.S.C. §§ 31341 and 31342 (1988); *see also Stevens Technical,* 913 F.2d at 1534–35. Accordingly, Turecamo claims that it has met all of the requirements to pursue an *in personam* action using principles of *in rem* liability and, thus, summary judgment in its favor is appropriate. In response, Defendant does not contest the facts presented by Turecamo. (Def.'s Opposition to Pl.'s Mot. for Summ.J. at 1). Instead, Defendant merely argues that the MCILA is clear that a maritime lien may not be pursued against a public vessel. As such, Defendant contends that the Eleventh Circuit cases are wrongly decided and should not be followed.

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). Summary judgment is also proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party to a summary judgment motion need make this showing only after the mov-

ing party has satisfied its burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed. R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Adickes*, 398 U.S. at 158–59, 90 S.Ct. at 1609.

## II. *Maritime Lien*

### A. Statutory Framework

#### 1. Waiver of Sovereign Immunity

As a waiver of the United States' sovereign immunity, Congress, in 1920, passed the SAA "which provided generally that a 'libel in personam' for damages could be filed against the government in any case where, if the government merchant vessel were privately owned or operated, a 'proceeding in admiralty' could be maintained." [1] *Canadian Aviator Ltd. v. United States*, 324 U.S. 215, 220, 65 S.Ct. 639, 642, 89 L.Ed. 901 (1945). *See* 46 U.S.C. app. § 742 (1988). The SAA explicitly states, however, that no vessel owned by the United States "shall ... be subject to arrest or seizure by judicial process in the United States or its possessions." 46 U.S.C. app. § 741 (1988).

Subsequently, in 1925, Congress expanded the waiver of sovereign immunity in the SAA, which at that time was limited to "merchant" vessels, to include all "public" vessels. This expansion occurred via passage of the Public Vessels Act ("the PVA") (now codified at 46 U.S.C. app. §§ 781–90 (1988)). The PVA provides:

> A libel action in personam in admiralty may be brought against the United States, or a petition impleading the United States, for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States....

46 U.S.C. app. § 781 (1988). Similar to the SAA, however, the PVA contains a provision stating that "[n]othing in this chapter shall be construed to recognize the existence of or as creating a lien against any public vessel of the United States." 46 U.S.C. app. § 788 (1988).

#### 2. Statutory Creation of Maritime Lien

In 1910, Congress passed the now-repealed Federal Maritime Lien Act ("FMLA"), which in part provided:

> [a]ny person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

Act of June 23, 1910, c. 373 § 1, 36 Stat. 604 (repealed 1988). The act "significantly broaden[ed] the number and variety of maritime liens that [could] arise by contract[, providing] a statutory right to a lien for the named items of repairs, supplies, towage, and drydocking, as well as any other 'necessaries' of all kinds." Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 8–3, at 256 (1987).

In 1988, the FMLA was repealed by Congress and recodified as the MCILA, which became effective January 1, 1989. The MCILA, as amended, provides in part:

> (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—
>
> (1) has a maritime lien on the vessel;
>
> (2) may bring a civil action in rem to enforce the lien; and
>
> (3) is not required to allege or prove in the action that credit was given to the vessel.

---

1. In 1960, the SAA was amended to delete the clause requiring that the vessel be employed as a "merchant vessel." This amendment was enacted to eliminate the controversy over when a vessel constituted a "merchant vessel." *Stevens Technical Servs., Inc. v. United States*, 913 F.2d 1521, 1528 (11th Cir.1990). As a result, the SAA now "covers all vessels owned or operated by the government, whether acting in the capacity of a typical freight-earning ship or in the capacity of a public vessel under control of military authorities." *Id.*

(b) This section does not apply to a public vessel.

46 U.S.C. § 31342 (1988). Accordingly, except for the addition of subsection (b), which explicitly states that the section does not apply to public vessels, the MCILA essentially contains the same provisions for creating a maritime lien as the former FMLA.

## B. Eleventh Circuit Precedent

In *Stevens Technical Servs., Inc., v. United States*, 913 F.2d 1521 (11th Cir.1990), the Eleventh Circuit first addressed the issue of whether or not a subcontractor, which performed repairs on a public vessel, could pursue an action under a maritime lien theory against the United States for payment on the repairs. In *Stevens Technical*, the plaintiff subcontractor contracted with the prime contractor to perform repairs on a public vessel of the United States. *Id.* at 1525. The prime contractor's contract was accepted and approved by government agencies and included notice that the plaintiff subcontractor would perform significant work. *Id.* After the completion of the work, the prime contractor failed to reimburse the subcontractor for the full balance. *Id.* at 1526. As a result, the subcontractor filed an *in personam* action against the prime contractor and an *in rem* action against the United States, as the owner of the vessel. *Id.* After a bench trial, judgment was entered against the prime contractor for the amount due; however, the claim against the United States was dismissed upon a finding that an *in rem* action could not be pursued against the United States. *Id.*

Upon appeal, the Eleventh Circuit thoroughly discussed the history of the SAA and the PVA. The court concluded that the prohibition against "arrest or seizure" of a public vessel in the SAA was substantially the same as the prohibition against the creation of "a lien against any public vessel" under the PVA. *Id.* at 1524; *see also* 46 U.S.C. app. §§ 741 and 788 (1988). The court found that the only limitation these provisions were intended to provide were against the seizure

or arrest of a government vessel.[2] *Stevens Technical*, 913 F.2d at 1524. Otherwise, the statutes " 'impose on the United States the same liability (*apart from seizure or arrest under a libel in rem*) as is imposed by the admiralty law on the private ship owner ....' " *Id.* (quoting *Canadian Aviator, Ltd. v. United States*, 324 U.S. 215, 228, 65 S.Ct. 639, 646, 89 L.Ed. 901 (1945)). Accordingly, the court found that the plaintiff could pursue an "*in personam* [action] against the government to be determined on principles of both *in personam* and *in rem* liability under the maritime law." *Id.*

Having found that the plaintiff could pursue an *in personam* action against the government, using *in rem* principles of liability, the court addressed whether the plaintiff, in fact, had a maritime lien against the government under the FMLA. *Id.* at 1534–37. The court found that the repairs performed by the plaintiff subcontractor constituted "necessaries" under the FMLA. In addition, the court concluded that "the repairs performed by [the plaintiff subcontractor] were ordered by authorized persons, performed by [the plaintiff], and accepted by authorized persons so that [the plaintiff] became a lienor under §§ 971–73" of the FMLA, and there was no waiver of the lien. *Id.* at 1537.

Under a similar set of facts, the Eleventh Circuit returned to this issue in *Marine Coatings of Alabama, Inc. v. United States*, 932 F.2d 1370 (11th Cir.1991). The court summarized the case by stating that:

> [t]he gist of the complaint was that although [the plaintiff subcontractor] was filing an *in personam* action to recover damages [for nonpayment on ship repairs performed], it was relying on the [FMLA] (which contains an *in rem* provision similar to a common law mechanic's lien) to attach a lien to the three ships in order to secure payment of the amounts owed.

*Id.* at 1373. The court rejected the government's challenge to such a proceeding and, relying upon *Stevens Technical*, stated that "[t]he law of our circuit is that the SAA and PVA permit the use of the libel *in personam*

---

**2.** The court stated that these provisions: are in no sense a prohibition on the creation or existence of a maritime lien. They each assure

that there can be no arrest or seizure of a government vessel.
*Stevens Technical,* 913 F.2d at 1524.

on principles of *in rem* liability notwithstanding the no lien clause located at 46 U.S.C.App. § 788." *Id.* at 1375. As such, the case was reversed and remanded for further proceedings by the district court. *Id.* at 1377.

After the repeal of the FMLA in 1988 and the recodification under the MCILA, it was unclear whether the *Stevens Technical–Marine Coatings* rationale still applied in the Eleventh Circuit. The uncertainty was heightened due to the explicit inclusion in the MCILA that 46 U.S.C. § 31342 "does not apply to [ ] public vessel[s]." *See* 46 U.S.C. § 31342(b) (1988). The Eleventh Circuit addressed this issue in *Bonanni Ship Supply, Inc. v. United States,* 959 F.2d 1558 (11th Cir.1992). The court noted that:

> [t]he legislative history of section 31342 of the MCILA states that '(t)his section makes *no substantive change to law.* This section does not supersede the prohibition under [the PVA], the Foreign Sovereign Immunities Act, or [the SAA], on bringing an *in rem* action against a public vessel.'

*Id.* at 1562 (quoting H.Rep. No. 100–918, *reprinted at* 7 U.S.C.C.A.N., 100th Cong., 2d Sess. 6104, 6141 (1988) (emphasis added)). Accordingly, the court found that:

> because Congress did not purport to alter the rights and obligations of parties under preexisting admiralty law when it enacted the MCILA, and because we are bound to apply this court's interpretations of the preexisting law in *Stevens [Technical]* and *Marine Coatings* unless otherwise directed by the United States Supreme Court or the Eleventh Circuit en banc, we hold here that the district court erred in interpreting the MCILA to preclude the imposition of maritime liens on public vessels where an admiralty plaintiff sues the United States *in personam* on principles of *in rem* liability.

*Id.* at 1563–64.

## C. Application to Present Action

In the present action, there is no dispute as to the material facts. Turecamo towed Defendant's vessel to Portsmouth, Virginia, and, therefore, as required by the MCILA, Turecamo provided "necessaries" to the YFNB–33 SEACON. 46 U.S.C. § 31342 (1988). In addition, Defendant's personnel were aware of the subcontract between Turecamo and Project Logistics. Defendant's personnel approved of the use of the tug, the CYNTHIA TURECAMO, as evidenced by the bill of lading. Finally, Defendant's personnel accepted the delivery of the YFNB–33 SEACON from Turecamo. These factors support the requirement, under 46 U.S.C. § 31342, that the necessaries be provided on order of the owner or a person authorized by the owner. *See Stevens Technical,* 913 F.2d at 1534–36; *see also* 46 U.S.C. § 31341 (1988) (listing those persons presumed to have authority to procure necessaries as including the owner, master or "person[s] entrusted with the management of the vessel at the port of supply"). Based upon these facts, this Court finds that Turecamo has met its burden of demonstrating the existence of a maritime lien under the MCILA and, thus, Turecamo is entitled to recover *in personam,* utilizing principles of *in rem* liability.

Notwithstanding its failure to contest Turecamo's statement of material facts, Defendant contends that Turecamo is not entitled to summary judgment because Congress' intent in enacting the MCILA was clearly not to allow the establishment of a lien against a public vessel. Defendant argues that the enactment of the MCILA was a change in the law from the FMLA, and the Eleventh Circuit's *Bonanni* ruling was incorrect. As support, Defendant cites the following legislative history, related to the addition of subsection (b) to 46 U.S.C. § 31342, which states:

> [s]ection 31342 has been rewritten by deleting the parenthetical provisions relating to excluding public vessels from the application of the existing law and replacing it with a new subsection (b) to assure clarity. This is not a substantive change but simply makes more explicit the long established rule of law prohibiting maritime liens against public vessels. It further clarifies the existing law that a claim may not be brought either in personam or in rem on a maritime lien theory against a public vessel. This section does not affect a cause of

action against the United States based on a valid maritime contract.

101st Cong., 1st Sess., 135 Cong.Rec. 9308, 9312 (1989) (House Committee on Merchant Marine and Fisheries' section-by-section analysis of H.R. 2459, Coast Guard Authorization Act of 1989).

While Defendant has presented persuasive evidence that, arguably, Congress' intent was to ensure that a lien against a public vessel be foreclosed, this Court is not free, as Defendant suggests, to ignore the clear ruling of the Eleventh Circuit. If the law of this jurisdiction is incorrect, it is for the United States Supreme Court or the Eleventh Circuit, *en banc,* to so state. *Bonanni,* 959 F.2d at 1564. This Court, therefore, is bound by the interpretation of the Eleventh Circuit regarding the MCILA. *Id.* at 1563. Accordingly, Turecamo's motion for summary judgment will be granted.

## CONCLUSION

For the foregoing reasons, summary judgment is hereby GRANTED in favor of Turecamo. The Clerk of Court is directed to enter an appropriate judgment in favor of Plaintiff, Turecamo.

**SO ORDERED.**