FAY, Circuit Judge:
 

 Appellant, Marine Coatings of Alabama, Inc. (“MCI”), is an Alabama corporation which engages in various ship repair services. On August 15, 1984, MCI filed suit in federal district court in Alabama against appellee, the United States of America, to recover money allegedly owed to MCI for repair services on three U.S. naval vessels. The district court granted summary judgment in favor of the United States. MCI appealed, claiming that the district court erred in finding that no issue of material fact existed with respect to whether MCI was entitled to a maritime lien under the Maritime Lien Act (“MLA”), and in finding that even if MCI were entitled to such a lien, its failure to comply with the Contract Disputes Act (“CDA”) barred recovery in district court. We find that the district court’s exercise of subject matter jurisdiction was proper, notwithstanding section 788 of the Public Vessels Act. We therefore AFFIRM that portion of the district court’s opinion. However, we find that the district court erred in awarding summary judgment to the United States. First, we find that a material issue of fact does exist regarding MCI’s entitlement to a maritime lien. Second, we find that the CDA does not preclude the bringing of an admiralty proceeding in which the United States has already waived sovereign immunity, merely because the admiralty cause of action arises out of an arguably contractual relationship. Consequently, for the reasons set forth more fully herein, we REVERSE and REMAND this case to the district court for proceedings consistent with this opinion.
 

 Factual History
 

 In the early 1970’s, the United States entered into two identical Master Ship Repair Contracts with Braswell Shipyards, Inc. (“Braswell”) to do repair and alteration work on U.S. naval vessels. The first contract was between Braswell and the Navy’s Supervisor of Shipbuilding, Conversion and Repair (“SupShip”) in Charleston, South Carolina. The second was between Bras-well and the Navy’s Military Sealift Command (“MSC”) in Bayonne, New Jersey. Under these master contracts, the Navy could issue job orders to Braswell for repairs to particular Navy vessels on a periodic job-by-job basis. Braswell was responsible for furnishing materials, labor, and services necessary to complete the job. The master contracts also permitted Bras-well to hire subcontractors to perform repairs specified in the job orders; however, the trial court found that the contracts did not purport to make Braswell an agent of the government.
 

 On February 17, 1984, the Navy issued job orders to Braswell as the successful bidder among Master Ship Repair Contract holders to repair the USNS NEOSHO, a fleet tanker owned and operated by the MSC, and the YRST-2, a naval salvage vessel. On March 15, 1984, Braswell was awarded the job order to repair the SCHEREZADE, a Navy mine warfare
 
 *1369
 
 training vessel. Appellant MCI was one of the subcontractors which submitted bids to Braswell in order for Braswell to submit its bid to the Navy. After having been awarded the aforementioned job orders based upon its general contractor’s bid, Braswell contracted with MCI for the painting, cleaning, and coating of the three vessels. MCI performed the specified work on all three vessels in its subcontract with Bras-well.
 

 United States Government inspectors from MSC and SupShip inspected and approved MCI’s work. MCI submitted an invoice to Braswell for the completed work on the ships. MSC and SupShip, according to their agreements with Braswell, paid Braswell for the repairs performed by MCI. Braswell, however, failed to pay MCI for the work.
 

 Consequently, on July 20, 1984, counsel for MCI formally notified MSC that it had performed repairs on the NEOSHO and that MCI reserved the right to sue the government pursuant to 46 U.S.C.App. §§ 741, 742, and 971 if Braswell did not remit immediately the $76,000 due MCI for repairs to that vessel. Shortly thereafter, MCI sued Braswell for the amounts owed for repairs on all three vessels. Less than one month later, on August 13, 1984, Bras-well filed for Chapter 11 reorganization.
 

 Procedural History
 

 On August 15, 1984, MCI filed an
 
 in 'personam
 
 action against the United States, alleging subject matter jurisdiction pursuant to the Suits in Admiralty Act (“SAA”), 46 U.S.C.App. §§ 741-52 (1988), and the Maritime Lien Act, 46 U.S.C.App. §§ 971-75 (Supp. V 1987) (now codified as amended 46 U.S.C. §§ 31341-43 (1988)). The gist of the complaint was that although MCI was filing an
 
 in personam
 
 action to recover damages, it was relying on the Maritime Lien Act (which contains an
 
 in rem
 
 provision similar to a common law mechanic’s lien) to attach a lien to the three ships in order to secure payment of the amounts owed. Defendant United States moved for dismissal based on lack of subject matter jurisdiction. On August 13, 1985, the district court granted defendant’s motion, and dismissed MCI’s suit for lack of jurisdiction. On appeal,
 
 Marine Coatings of Alabama, Inc. v. United States,
 
 792 F.2d 1565 (1986), a previous panel of this court reversed the district court’s dismissal because it had impermissibly ruled on the basis of a Fed.R.Civ.P. 12(b)(1) motion to dismiss rather than a Rule 12(b)(6) motion for summary judgment.
 
 See id.
 
 at 1565-66. The case was remanded for further proceedings consistent with the panel’s opinion. On remand, both MCI and the United States moved for summary judgment. On April 9, 1987, the district court granted appellee United States’ motion for summary judgment and denied MCI’s motion.
 
 Marine Coatings of Alabama, Inc. v. United States,
 
 674 F.Supp. 819, 827 (S.D.Ala.1987).
 

 The district court held that it had jurisdiction to hear the ease either under the SAA or the Public Vessels Act (“PVA”) (codified at 46 U.S.C.App. §§ 781-90 (1988)).
 
 [1]
 
 Then the court held that Braswell was not one authorized by the owner (the United States) of the three public vessels involved to procure MCI’s services for the vessels as required by section 972 of the Maritime Lien Act. The court therefore found that MCI would not have been enti-
 
 *1370
 
 tied to a maritime lien on the vessels if they had been privately owned. Consequently, because MCI would have been unable to obtain a maritime lien against a private owner under the same circumstances, it could not obtain one against the United States under either the SAA or PVA.
 
 [2]
 

 The court went on to hold that even if MCI were entitled to a maritime lien, the court still lacked subject matter jurisdiction because MCI had failed to comply with the Contract Disputes Act (“CDA”) (codified at 41 U.S.C. §§ 601-13 (1988)). The CDA is a statute that waives sovereign immunity for claims against the United States relating to contracts. In order to pursue such a claim, the CDA requires that certain procedures be followed in order to bring a claim (by a subcontractor, in this instance) against the United States relating to a contract. MCI did not comply with the CDA, so the district court held that it lacked jurisdiction based on the CDA, even if MCI were able to prove it was entitled to a maritime lien.
 

 The court reasoned that MCI’s claim was a claim “relating to a contract,” and therefore the CDA applied. The court determined that MCI’s maritime lien theory was based upon an underlying contract theory, because, “MCI could assert essentially the same right to recover from the Government by arguing that it had a contract for services with the Government made through the Government’s alleged agent, Braswell.” (R-39, 16). The court pointed out that MCI’s allegation that Braswell was a person authorized by the owner to procure services within the meaning of the MLA was basically the same as alleging that Braswell was “an agent of the owner.” As a result, the court then stated:
 

 MCI should not be able to avoid complying with the Contract Disputes Act merely by stating its claim in such a way that the claim does not appear to fall within the Act. Since MCI’s claim is essentially based on an underlying contract for services, the Court concludes that the Contract Disputes Act applies to the resolution of the claim.
 

 (R-39, 16-17). Accordingly, because MCI had not complied with the CDA, the court granted summary judgment in favor of the United States.
 

 MCI appeals. The United States cross-appeals the district court’s finding of jurisdiction under the SAA or PVA. It asserts that 46 U.S.C.App. § 788 bars the use of a maritime lien against a public vessel.
 

 Discussion
 

 The district court’s grant of summary judgment in the case before us presents two main issues. The first main issue is whether the district court properly determined that MCI was not entitled to a maritime lien. The maritime lien issue presents two points of discussion: first, whether the “no lien” clause of the PVA prohibits a lien against a public vessel and therefore precludes subject matter jurisdiction; second, whether MCI has raised a genuine issue of material fact as to whether it is entitled to a maritime lien according to the MLA. The second major issue is whether, if in fact a material issue of fact remained as to whether MCI was entitled to a maritime lien, the CDA prohibits MCI from pursuing its
 
 in personam
 

 [3]
 

 claim via the SAA or
 
 *1371
 
 PVA without complying with the CDA’s procedural prerequisites to suit.
 

 At the outset, we note the recent decision of this court in
 
 Stevens Technical Services, Inc. v. United States,
 
 913 F.2d 1521 (11th Cir.1990).
 
 Stevens,
 
 a case nearly identical to the one before us, addressed issues of a subcontractor’s right to enforce against the government a maritime lien on a public vessel.
 
 [4]
 

 1. The Maritime Lien.
 

 We first address the United States’ cross-appeal regarding jurisdiction. We find that the district court was correct in concluding that it had jurisdiction to hear the maritime lien claim. The law of our circuit is that the SAA and PVA permit use of the libel
 
 in personam
 
 on principles of
 
 in rem
 
 liability notwithstanding the no lien clause located at 46 U.S.C.App. § 788.
 
 [5]
 

 See Stevens,
 
 913 F.2d at 1533. Therefore, the district court had subject matter jurisdiction, and, accordingly, we AFFIRM that portion of its opinion. The troubling issue in the case before us is whether the district court erred in holding that MCI was not entitled to a maritime lien under the provisions of the Maritime Lien Act, and therefore, whether the court erred in awarding summary judgment.
 

 Our standard of review with respect to an appeal of the granting of summary judgment is that we reverse if the nonmoving party has designated specific facts, by affidavits, depositions, answers to interrogatories, or admissions on file, to show that a genuine issue of material fact exists.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986);
 
 Hoffman v. Allied Corp.,
 
 912 F.2d 1379, 1382-83 (11th Cir.1990). A dispute is “genuine,” if the evidence is such that a reasonable jury could return a verdict for the nonmovant.
 
 Anderson v. Liberty Lobby,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986);
 
 Hoffman,
 
 912 F.2d at 1383. We view all evidence in a light most favorable to the nonmovant, and draw all justifiable inferences in the nonmovant’s favor.
 
 Hoffman,
 
 912 F.2d at 1383 (citations omitted).
 

 The applicable law at issue is the Maritime Lien Act, 46 U.S.C. § 971 (Supp. V 1987). Section 971
 
 [6]
 
 provides that “[a]ny
 
 *1372
 
 person furnishing repairs ... to any vessel ... upon the order of ... a person authorized by the owner, shall have a maritime lien ... which may be enforced by suit in rem.” The government contends, and the district court held, that MCI had failed to raise a genuine issue as to whether Bras-well, the general contractor, was a “person authorized by the owner [United States]” to order the furnishing of repairs. Consequently, the court held that MCI was not entitled to a maritime lien as a matter of law.
 

 As the court in
 
 Stevens
 
 pointed out, section 972
 
 [7]
 
 of the Maritime Lien Act broadly defines those “persons ‘authorized by the owner,’ § 971, to procure repairs, supplies and necessaries.”
 
 Stevens,
 
 913 F.2d at 1535. Though section 972 lists those persons
 
 presumed
 
 to have authority from the owner to procure repairs, the presumption is not a
 
 conclusive
 
 presumption.
 
 Stevens,
 
 913 F.2d at 1536 (citing
 
 Gulf Oil Trading Co. v. M/V Caribe Mar,
 
 757 F.2d 743, 749 (5th Cir.1985)). The purpose of the presumption is to eliminate the affirmative duty of inquiry upon those who furnish repairs as to the authority of the person procuring such repairs.
 
 Id.
 
 Accordingly, it is reasonable to conclude that persons falling outside the class of persons presumed to have authority might still have had authority to procure repairs; there merely is no presumption of such authority.
 

 Further,
 
 prior
 
 authorization by the owner to the party procuring the repairs is not an essential requisite to preserving a lien position.
 
 Atlantic & Gulf Stevedores, Inc. v. M/V Grand Loyalty,
 
 608 F.2d 197, 202 (5th Cir.1979).
 
 [8]
 
 Although prior authorization would be most relevant and material, our circuit has interpreted the MLA not to require prior authorization.
 
 Id.
 
 Instead, authorization, either actual or fairly presumed, given prior to or during performance of the services, or ratified subsequent to performance will suffice.
 
 Id.
 

 Applying the relevant standard of review, we find that there is a genuine issue as to whether the government procured MCI’s work, authorized the work, or ratified the procurement of MCI’s work. Alternatively, there is a genuine issue as to whether Braswell was authorized by the government to procure MCI’s work.
 
 [9]
 
 Resolution of this issue is essential to determine whether MCI is entitled to recovery under the MLA. Because we find a material issue of fact exists on this point, we REVERSE and REMAND for appropriate proceedings in the district court.
 

 We also note that the absence of proof from MCI showing that it affirmatively relied on the credit of the vessels rather than that of Braswell was not deci
 
 *1373
 
 sive of whether MCI was entitled to a lien.
 
 See Stevens,
 
 913 F.2d at 1536. Section 30, Subsec. P of the Maritime Lien Act concludes with the following language: “[I]t shall not be necessary to allege or prove that credit was given to the vessel.” 46 U.S.C.App. § 971 (Supp. V 1987). To the extent that the district court relied on the absence of such proof in its determination, such reliance was error, and accordingly, we REVERSE.
 
 [10]
 

 2. The Contract Disputes Act.
 

 The CDA is only one of many statutes waiving sovereign immunity. The Federal Tort Claims Act (“FTCA”), 28 U.S.C. §§ 2671-80 (1988), the SAA, and PVA also waive immunity. The government’s position appears to be that the CDA imposes a restrictive limitation on the scope of the SAA’s and PVA’s waiver of immunity. The district court also seems to have read such a restriction into the respective provisions. We see no reasonable justification for such a reading. To impose external limits on an express waiver of sovereign immunity would frustrate Congress’s purpose in enacting the provisions. The following analogy, set out in
 
 Stevens,
 
 illustrates the point:
 

 Suppose for example that a tanker the size of [USNS NEOSHO] navigating the Houston Ship channel conned by a Texas compulsory pilot crashes into a tanker at a major petroleum dock doing hundreds of thousands of dollars in damage, both afloat and ashore. Notwithstanding the existence of the Extension of Admiralty Act, 46 U.S.C.App. § 740, the government would be liable if the suit were the equivalent of one
 
 in rem,
 
 but would walk off scott free on a suit
 
 in -person-am
 
 because of the actions of an involuntary servant. Nor as actions of an involuntary servant would there be any liability under FTCA.
 

 The upshot would be that after suits on the admiralty side of the district court and belated efforts in the claims court with a foray under the FTCA, it would be back in the halls of Congress. One could understand the frustration of some knowledgeable senator who might exclaim, “What are we doing here? I though [sic] our predecessors in 1925 had sent such cases to the admiralty courts.”
 

 Stevens,
 
 913 F.2d at 1533 (citations omitted).
 

 The FTCA and the CDA both waive immunity, but there is no need to apply either if another method of bringing suit is available. The Maritime Lien Act’s provisions, coupled with the SAA and PVA read together, offer a means for plaintiffs to sue the government
 
 in personam
 
 in district court on principles of
 
 in rem
 
 liability. Though MCI would be precluded from bringing suit for recovery on the
 
 contract
 
 unless it complied with the CDA, the CDA does not supersede admiralty provisions providing for another means of recovery. Accordingly, we REVERSE the district court’s order granting summary judgment in favor of the government, and REMAND for further proceedings consistent with this opinion.
 

 [1]
 

 . The court determined that the three ships were "public vessels,” i.e., ships owned and operated by the government for official purposes. Therefore, provisions of the Public Vessels Act applied. The SAA, as its name implies, governs suits in admiralty, including those between private parties. The provisions of the Public Vessels Act apply when suits in admiralty are brought against the United States regarding public vessels. According to the PVA, "[s]uch suits shall be subject to and proceed in accordance with the provisions of [the Suits in Admiralty Act] or any amendment thereof, insofar as the same are not inconsistent herewith." 46 U.S.C. App. § 782 (1988). Thus, the two acts must be read together with respect to suits in admiralty involving public vessels. The United States argues that the district court erred in exercising subject matter jurisdiction, claiming that the "no lien clause” of section 788 of the PVA, see
 
 infra
 
 note 5, bars maritime liens against public vessels. We reject this argument based upon our recent holding in
 
 Stevens Technical Services, Inc. v. United States,
 
 913 F.2d 1521 (11th Cir.1990), discussed infra.
 

 [2]
 

 . 46 U.S.C.App. § 742(SAA), Libel in personam, provides, in pertinent part:
 

 In cases where if such vessel were privately owned or operated ... a proceeding in admiralty could be maintained, any ... proceeding
 
 in personam
 
 may be brought against the United States.... Such suits shall be brought in the district court of the United States....
 

 MCI sought to obtain maritime lien, an
 
 in rem
 
 libel, against the United States. Section 743 (SAA), procedure in cases of libel in personam, provides that a libellant (plaintiff) may apply
 
 in rem
 
 principles in an
 
 in personam
 
 proceeding against the United States because Public Vessels are not subject to seizure.
 
 See Canadian Aviator, Ltd. v. United States,
 
 324 U.S. 215, 226, 65 S.Ct. 639, 645, 89 L.Ed. 901 (1945);
 
 Stevens Technical Services v. United States,
 
 913 F.2d 1521, 1523-24 (11th Cir.1990). The PVA also permits suits
 
 in personam
 
 against the United States involving Public Vessels, in accordance with the SAA, "insofar as the [provisions of the SAA] are not inconsistent" with the provisions of the PVA. 46 U.S.C.App. § 782 (1988);
 
 Stevens,
 
 913 F.2d at 1524.
 

 [3]
 

 . The claim may be better characterized as a quasi-in
 
 rem
 
 claim, because MCI is asserting an
 
 in rem
 
 security device in an
 
 in personam
 
 proceeding, due to the prohibition against seizure
 
 *1371
 
 of public vessels found in 46 U.S.C.App. § 788 (1988).
 

 [4]
 

 . The
 
 Stevens
 
 court was not presented with the CDA argument. However, the court did imply that the CDA’s provisions would not affect the outcome in that case; for the same reason pointed out in that discussion and for the reasons discussed
 
 infra,
 
 we believe the CDA does not apply to the claim asserted by MCI under the Maritime Lien Act.
 

 [5]
 

 . "Nothing contained in this chapter shall be construed to recognize the existence of or as creating a lien against any public vessel of the United States." 46 U.S.C.App. § 788 (1988). The government argued in
 
 Stevens,
 
 and in the case before this court, that section 788 prohibited the use of libel
 
 in personam
 
 on principles of
 
 in rem
 
 liability as permitted under sections 742 and 743 of the SAA.
 
 Stevens
 
 clearly resolved this issue against the government. The court explained the strong policy argument against such a reading of section 788. According to the court, such a reading would "directly increase the number of private bills to be handled by Congress in its largess.”
 
 Stevens,
 
 913 F.2d at 1533. Further, in
 
 Stevens,
 
 counsel for the government could cite no case supporting its reading of section 788. The only case we find supporting such a reading is
 
 River & Offshore Servs. Co. v. United States,
 
 651 F.Supp. 276 (E.D.La.1987). In that case, the court merely stated:
 

 46 U.S.C. § 788 forbids liens against public vessels. Section 788 provides, "Nothing contained in this chapter shall be construed to recognize the existence of or as creating a lien against any public vessel of the United States." Therefore, the United States is entitled to summary judgment dismissing the maritime lien claim against the United States.
 

 Id.
 
 at 281-82 (footnote omitted). The court cited as authority the earlier panel opinion of the case before us,
 
 Marine Coatings,
 
 792 F.2d at 1567.
 

 This appeal has been held in abeyance pending the outcome of
 
 Stevens.
 
 Accordingly, our holding as to the application of section 788 follows
 
 Stevens,
 
 and section 788 does not prohibit a libel
 
 in personam
 
 on principles of
 
 in rem
 
 liability.
 

 [6]
 

 .Section 971, "Persons entitled to lien," provides in full:
 

 Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.
 

 
 *1372
 
 46 U.S.C.App. § 971 (Supp. V 1987).
 

 [7]
 

 . Section 972, "Persons authorized to procure repairs, supplies and necessaries,” provides:
 

 The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel.
 

 46 U.S.C.App. § 972 (Supp. V 1987).
 

 [8]
 

 . The Eleventh Circuit in
 
 Bonner v. City of Prichard,
 
 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.
 

 [9]
 

 . The following facts, offered through deposition testimony and affidavits by MCI's witnesses, support a finding that MCI has at least raised an issue as to whether it was entitled to a lien. The government was well aware of MCI’s performance. On two of the three job order bids (NEOSHO and YRST-2), Braswell submitted a list of subcontractors which included MCI. MCI’s percentage of the total work on the YRST-2 was between 40 and 50 percent. Its percentage of the total work on the SCHERE-ZADE was between 35 and 40 percent. On all three of the jobs, government officials were well aware of MCI’s presence, and directly inspected MCI's work, often without any Braswell officials present. Representatives of the Supervisor of Shipbuilding and of the MSC maintained offices on Braswell's premises, and gave provisional and final acceptance to work performed by MCI. Finally, all of the repairs were accepted and fully compensated by the Supervisor of Shipbuilding and the MSC.
 

 [10]
 

 . We also note that there was no waiver of any maritime lien by either MCI or Braswell. The master contracts and job orders contained no waiver provisions.
 
 See
 
 46 U.S.C.App. § 974 (Supp. V 1987). Moreover, the master contract apparently
 
 expected
 
 the likelihood of liens arising. Clause 13 of the master contract between Braswell and the government provides that Braswell "shall immediately discharge or cause to be discharged any lien or right
 
 in rem
 
 of any kind ... which at any time exists or arises in connection with work done or materials furnished under any job order...." (Brief of Appellant, app. 2, p. 9).