**TURECAMO OF SAVANNAH, INC., Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

**No. 93–9006.**

United States Court of Appeals, Eleventh Circuit.

Nov. 1, 1994.

David V. Hutchinson, Asst. Director, Admiralty, Torts Branch, Civ. Div., Matthew M. Collette, Mark B. Stern, Attys., Appellate Staff, Civ. Div., Dept. of Justice, Washington, DC, for appellant.

Edwin D. Robb, Jr., Bouhan, Williams & Levy, Savannah, GA, for appellee.

Before BIRCH and CARNES, Circuit Judges, and BLACKBURN *, District Judge.

BLACKBURN, District Judge:

Plaintiff-appellee Turecamo of Savannah, Inc. ("Turecamo") filed suit pursuant to the Suits in Admiralty Act ("SAA"), 46

---

* Honorable Sharon Lovelace Blackburn, U.S. District Judge for the Northern District of Alabama, sitting by designation.

U.S.C.App. §§ 741–752 (1988),[1] to recover money allegedly owed Turecamo by the defendant-appellant United States for towing services for a United States naval vessel. The district court granted Turecamo's motion for summary judgment and entered judgment in favor of Turecamo and against the United States. The United States appeals this ruling, asserting that the Maritime Commercial Instruments and Lien Act ("MCILA"), 46 U.S.C. §§ 31301–31343 (1988), prohibits a cause of action against the United States to enforce a maritime lien against a public vessel. Because we are bound to follow the precedent set in *Bonanni Ship Supply v. United States,* 959 F.2d 1558 (11th Cir.1992),[2] we affirm the district court's decision. However, as discussed *infra,* reconsideration of the holding in *Bonanni,* might be appropriate for en banc review by this court.

## I. BACKGROUND

The facts of this case are not disputed. Turecamo, a Georgia corporation doing business in Savannah, Georgia, is engaged in the business of towing oceangoing and other vessels. The *YFNB–33 Seacon* is a public vessel owned by the United States. In the fall of 1990, the Government sought to have the *YFNB–33 Seacon* towed from Mayport, Florida, to the United States naval facility in Portsmouth, Virginia. In order to have the vessel towed, the Government, through the offices of the Department of Defense, Military Traffic Management Command, entered into a contract of carriage with Panocean Marine, Inc. ("PMI"). PMI's subsidiary, Project Logistics & Transportation, Inc. ("Project Logistics") contracted with Turecamo for the services of Turecamo's tug, the *Cynthia Turecamo.* Government personnel approved the use of the *Cynthia Turecamo* for the tow, and Turecamo towed the *YFNB–33 Seacon* from Mayport, Florida, to Portsmouth, Virginia, in accordance with the terms of United States Government Bill of Lading D–1383500. Pursuant to its contract with Project Logistics, Turecamo was to receive $55,800 for its towing services; however, Turecamo was paid only $20,800.

Turecamo then filed a Complaint against the United States, as owner of the *YFNB–33 Seacon,* to recover the balance due of $35,-000,[3] alleging that the district court had jurisdiction pursuant to 28 U.S.C. § 1333 and 28 U.S.C. § 1331. Turecamo asserted that by providing the towing services for the Government's vessel, it had provided necessaries to the vessel within the meaning of 46 U.S.C. § 31342, and therefore had an in personam action pursuant to 46 U.S.C.App. § 742.[4]

Turecamo moved for summary judgment on the ground that Eleventh Circuit precedent[5] holds that a ship repair subcontractor has a maritime lien for necessaries provided to public vessels where the subcontractor contracted with a general contractor which has contracted with the United States for

---

**1.** 46 U.S.C.App. § 742 provides:

In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States.... Such suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found.

**2.** *See United States v. Thomas,* 916 F.2d 647, 652 n. 6 (11th Cir.1990); *Garay v. Carnival Cruise Line,* 904 F.2d 1527, 1534 n. 10 (11th Cir.1990), *cert. denied,* 498 U.S. 1119, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991).

**3.** In its Complaint, Turecamo asserted that it was still owed $35,800. The court assumes that this was a typographical error because the Affidavit of Edward G. Cawthon, Vice President and General Manager of Turecamo, states that Turecamo is owed $35,000. In addition, this comports with the other figures in the complaint—that the invoice for services was for $55,800, and that Turecamo was paid $20,800.

**4.** Turecamo asserted that, pursuant to 46 U.S.C.App. § 743, its action proceeds in accordance with principles of action in rem against the vessel for whom the necessaries have been provided.

**5.** The Eleventh Circuit precedent cited by Turecamo included *Bonanni Ship Supply v. United States,* 959 F.2d 1558 (1992); *Marine Coatings v. United States,* 932 F.2d 1370 (1991); and *Stevens Technical Servs. v. United States,* 913 F.2d 1521 (1990).

performance of those subject services. Turecamo further asserts that if the subcontractor is not paid by the general contractor, the subcontractor has a right to proceed in personam against the United States by relying on in rem principles to establish liability for unpaid debts owed by the contractor to the subcontractor.

The United States District Court for the Southern District of Georgia granted Turecamo's motion. *See Turecamo of Savannah, Inc. v. United States,* 824 F.Supp. 1069 (S.D.Ga.1993). The court agreed that Turecamo had met its burden of demonstrating the existence of a maritime lien under the MCILA and held that Turecamo was therefore entitled to recover in personam, utilizing principles of in rem liability. The court entered judgment in favor of Turecamo on June 18, 1993. The Government filed a Notice of Appeal on August 9, 1993.

## II. ANALYSIS

The issue before this court is whether the MCILA supports an in personam action against the United States based on in rem principles. We review de novo a district court's grant of summary judgment. *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994). In reviewing a grant of summary judgment, we apply the same legal standard that bound the district court. *Tittle v. Jefferson County Comm'n,* 10 F.3d 1535 (11th Cir.1994).

The Government contends that the MCILA precludes a cause of action against the United States based on a maritime lien theory. It provides:

(a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—

(1) has a maritime lien on the vessel;

(2) may bring a civil action in rem to enforce the lien; and

(3) is not required to allege or prove in the action that credit was given to the vessel.

(b) **This section does not apply to a public vessel.**

46 U.S.C. § 31342 (emphasis added). Therefore, the Government contends that the existence of a maritime lien against a public vessel under the MCILA is expressly prohibited. In *Bonanni,* although the court noted that "the MCILA on its face appears to preclude the imposition of a maritime lien on a public vessel," the court held that the MCILA does not "preclude the imposition of maritime liens on public vessels where an admiralty plaintiff sues the United States in personam on principles of in rem liability." 959 F.2d at 1562, 1564. The Government acknowledges that *Bonanni* controls, but argues that the panel was incorrect and should be overruled by the court en banc.

A. *Bonanni's* Interpretation of the MCILA

To determine whether the MCILA precludes imposing a maritime lien on a public vessel, this court in *Bonanni* determined first, that Congress did not intend to effect a change in the substantive law regarding maritime liens when it enacted the MCILA, and, second, that prior to the enactment of the MCILA, this circuit permitted imposing a maritime lien on a public vessel under existing maritime law.

In holding that Congress did not intend to change substantive admiralty law, the *Bonanni* panel relied on the legislative history of 46 U.S.C. § 31342, which provided in part that section 31342 made no substantive change to the law. 959 F.2d at 1562. The *Bonanni* panel therefore concluded that this court's interpretations of substantive admiralty law prior to the enactment of the MCILA bind courts of this circuit interpreting the MCILA. *Id.* at 1563–64.

In examining whether this circuit permitted imposing maritime liens on a public vessel prior to the enactment of the MCILA, the *Bonanni* panel noted that this court, in *Marine Coatings v. United States,* 932 F.2d 1370 (11th Cir.1991), and *Stevens Technical Services v. United States,* 913 F.2d 1521 (11th Cir.1990), "rejected the very rule that Congress had perceived to be in force when it enacted the MCILA, and ... acknowledged the availability of in personam actions against the United States on in rem principles of liability." 959 F.2d at 1563. The court further stated:

Although Congress may have thought when it enacted the MCILA that existing federal law precluded imposition of a maritime lien on a public vessel, this circuit's interpretations of that law, in particular the "no lien" clause of the PVA, state otherwise. A reading of the MCILA that does not preclude the imposition of a maritime lien against a public vessel, and only prohibits the arrest and seizure of the vessel as a means of effecting recovery against the Government, is both plausible and fully consistent with *Stevens* and *Marine Coatings*.

*Id.* (footnote omitted). Therefore, the court concluded that the MCILA does not preclude the imposition of maritime liens on public vessels where an admiralty plaintiff sues the United States in personam on principles of in rem liability. *Id.* at 1564.

### B. Legislative History of the MCILA

In 1988, Congress enacted the MCILA. 46 U.S.C. § 31342 originally provided:

(a) A person providing necessaries to a vessel **(except a public vessel)** on the order of a person listed in section 31341 of this title or a person authorized by the owner—

(1) has a maritime lien on the vessel;

(2) may bring a civil action in rem to enforce the lien; and

(3) is not required to allege or prove in the action that credit was given to the vessel.

Pub.L. No. 100–710, 102 Stat. 4748 (1988) (emphasis added). The legislative history of this section states that "[t]his section makes no substantive change to law. This section does not supersede the prohibition under the Public Vessels Act, the Foreign Sovereign Immunities Act, or the Suits in Admiralty Act, on bringing an in rem action against a public vessel." H.R.Rep. No. 918, 100th Cong., 2d Sess. 7, *reprinted in* 1988 U.S.C.C.A.N. 6104, 6141. However, this statement was written at a time when the provision did not expressly exclude public vessels. *See* H.R.Rep. No. 918, 100th Cong., 2d Sess. 7, at 8 (1988).[6]

In 1989, Congress deleted the parenthetical phrase excepting public vessels and placed the exception in a separate subsection as follows:

(a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—

(1) has a maritime lien on the vessel;

(2) may bring a civil action in rem to enforce the lien; and

(3) is not required to allege or prove in the action that credit was given to the vessel.

**(b) This section does not apply to a public vessel.**

46 U.S.C. § 31342 (emphasis added). Representative Robert W. Davis explained the reason for amending the statute:

Likewise, we have clarified provisions relating to maritime liens against public vessels. Although I felt that we had taken [care] of any uncertainty last year, we have rewritten section 31342 to clarify once and for all the fact that a claim may not be brought either in personal [sic] or in rem on a maritime lien theory against a public vessel.

135 CONG.REC. 9184 (daily ed. Nov. 20, 1989). The legislative history further provides:

Section 31342 has been rewritten by deleting the parenthetical provisions relating to excluding public vessels from the application of the existing law and replacing it with a new subsection (b) to assure clarity. **This is not a substantive change but simply makes more explicit the long established rule of law prohibiting maritime liens against public vessels. It further clarifies the existing law that a claim may not be brought either in personam or in rem on a maritime lien theory against a public vessel.** This section does not affect a cause of action against the United States based on a valid maritime contract.

135 CONG.REC. 9312 (daily ed. Nov. 21, 1989) (emphasis added).

---

**6.** The public vessels exclusion was added later at the suggestion of the Justice Department. *See*

H.R.Rep. No. 918, 100th Cong., 2d Sess. 7, *reprinted in* 1988 U.S.C.C.A.N. 6104, 6149.

## C. Application to Present Action

Because of this court's decision in *Bonanni*, the district court was correct in granting Turecamo's motion for summary judgment. Turecamo has satisfied the requirements of the MCILA, 46 U.S.C. § 31341; that is, Turecamo has demonstrated that PMI and its subsidiary, Project Logistics were authorized to act for the vessel owner by showing the following: (1) Performance of towing services is a necessary within the meaning of the MCILA, 46 U.S.C. §§ 31341 and 31342; (2) Government personnel approved the use of the tug, *Cynthia Turecamo;* and (3) the Government accepted the vessel upon delivery. Therefore, based upon existing Eleventh Circuit precedent, the district court correctly concluded that Turecamo had sustained its burden of demonstrating the existence of a maritime lien under the MCILA, and that Turecamo was thus entitled to recover in personam utilizing principles of in rem liability.

However, the rule announced in *Bonanni* may be appropriate for en banc reconsideration [7] for the following reasons:

1. As explained *supra*, the portion of section 31342's legislative history stating that the maritime lien provision "makes no substantive change in the law" was written at a time that the provision did not expressly exclude public vessels. *See* H.R.Rep. No. 918, 100th Cong., 2d Sess. 7, at 8 (1988).[8] It

does not appear that this was pointed out to the panel deciding *Bonanni*. Perhaps the panel would have reached a different result had the Government in that case educated the court on the timing of that statement in the enactment of the statute.

2. Although generally the MCILA was aimed at codifying existing maritime law, Congress stated that the Act also made a great many substantive changes. *See* H.R.Rep. No. 918, 100th Cong., 2d Sess. 7, *reprinted in* 1988 U.S.C.C.A.N. 6104, 6108–09 ("The Committee wants to make it clear, however, that the bill as reported does in fact make a great many substantive changes to the present law.... The Committee intends and hopes that the interpretation of the laws as codified and enacted by this bill will be based on the language off [sic] the bill itself.... There is no mandate in logic or case laws for reliance on legislative history to reach a result contrary to the plain meaning of the statute, particularly where that plain meaning is in no way unreasonable.")

3. The legislative history behind the 1989 amendment emphasizes Congress' intent that "a claim may not be brought either in personam or in rem on a maritime lien theory against a public vessel." *See* 135 CONG.REC. 9312 (daily ed. Nov. 21, 1989).

4. Because Congress has expressly stated its intent,[9] it is inappropriate to second-guess

---

7. At the court's request, oral argument focused on whether this issue was of such importance to merit en banc review. The Government emphasized that Congress thought the issue was important enough to amend the Act to clarify the law. The court requested that the parties submit letter briefs on whether this issue was worthy of utilizing the en banc resources of the Eleventh Circuit. The Government has responded that "the potential for maritime lien liability extends to over 1,000 public vessels, and therefore involves a substantial amount of money." As an example, the Government cited unpublished statistics which include that the United States Coast Guard entered into 214 contracts for necessaries in fiscal year 1993, for estimated expenditures of over $51 million. The Government further informed the court that there are currently eight pending cases involving this issue with over one million dollars at stake. In fact, the Government pointed out that the present case is the fourth case in the past five years in which this issue has been before the Eleventh Circuit. The Government also asserts that existing statutory and reg-

ulatory requirements make it extremely difficult for the Government to protect itself from the prospect of paying twice for necessary services and repairs to public vessels. For example, in many cases the Government is precluded by statute from requiring the prime contractor to post a bond to ensure that subcontractors will be paid. *See, e.g.,* 33 U.S.C.A. § 891d(c) (West Supp. 1994); 50 U.S.C.A.App. § 1744(c) (West 1990).

8. As noted *supra* at footnote 6, the public vessels exclusion was added later at the suggestion of the Justice Department. *See* H.R.Rep. No. 918, 100th Cong., 2d Sess. 7, *reprinted in* 1988 U.S.C.C.A.N. 6104, 6149.

9. The *Bonanni* panel acknowledged that Congress intended to codify a rule prohibiting both in personam and in rem actions asserting maritime liens against public vessels. *See Bonanni,* 959 F.2d at 1563 ("In enacting section 102 of the MCILA, Congress was in essence reasserting what it perceived to be a longstanding rule

Congress' view of existing law. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 828, 96 S.Ct. 1961, 1966, 48 L.Ed.2d 402 (1976) ("Whether that understanding of Congress was in some ultimate sense incorrect is not what is important.... For the relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what its perception of the state of the law was."). Also, assuming Congress did incorrectly interpret the state of the existing law, such interpretation was not unreasonable. As the *Bonanni* panel acknowledged, *Stevens Technical* and *Marine Coatings* were both decided after the 1988 Act and the 1989 amendment. At the time Congress enacted the MCILA, *Canadian Aviator v. United States*, 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901 (1945) (which involved a tort claim for negligence), was the only decision casting doubt on the perception of Congress. In addition, one year before Congress enacted the MCILA, a district court had stated that "46 U.S.C. § 788 [of the Public Vessels Act] forbids liens against public vessels." *River & Offshore Servs. Co. v. United States*, 651

against the imposition of maritime liens against public vessels.... This court in *Stevens* and *Marine Coatings*, however, has rejected the very rule that Congress had perceived to be in force

F.Supp. 276, 281 (E.D.La.1987). Therefore, one can see how Congress could have misinterpreted the existing law.

5. Even if Congress misinterpreted the existing law, Congress has now made it clear that a claim may not be brought on a maritime lien theory against a public vessel. *See* 135 CONG.REC. 9312 (daily ed. Nov. 21, 1989); *see also* 135 CONG.REC. 9183 (daily ed. Nov. 20, 1989); 135 CONG.REC. 9184 (daily ed. Nov. 20, 1989).

## III.  CONCLUSION

Following *Bonanni*, the district court properly granted Turecamo's Motion for Summary Judgment. Therefore, we AFFIRM.

when it enacted the MCILA, and has acknowledged the availability of in personam actions against the United States on in rem principles of liability.").