NATIONAL SPECIALTY INSURANCE COMPANY, Plaintiff,

v.

ABS FREIGHT TRANSPORATION, INC., et al., Defendants.

Case No. 13–14431–CIV.

United States District Court, S.D. Florida, Fort Pierce Division.

Signed Dec. 2, 2014.

Filed Dec. 4, 2014.

Ronald Steven Rawls, Ryan Kent Hilton, Butler Pappas Weihmuller Katz Craig, Tampa, FL, for Plaintiff.

Guy Scott DiMartino, Gordon & Doner, P.A., Carri S. Leininger, Williams Leininger & Cosby, Stuart, FL, Danya Pincavage, Richard Hugh Lumpkin, Ver Ploeg & Lumpkin, P.A., Miami, FL, George E. Carr, Law Offices of George E. Carr, Esq., Orlando, FL, for Defendants.

## *ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT*

DONALD L. GRAHAM, District Judge.

**THIS CAUSE** comes before the Court on Defendant Audrey Martin–Vegue's Motion for Partial Summary Judgment on Count II [D.E. 43], Defendants, Deborah Johnson, Benjamin Johnson, Herbert Lee Chapman, III and Michael Chapman's Notice of Joinder in and Adoption of Defendant, Audrey Martin–Vegue's Motion for Partial Summary Judgment [D.E. 49], Plaintiff's Motion for Summary Judgment [D.E. 45], Audrey Martin–Vegue's Supplement Brief in Support of Her Motion for Summary Judgment [D.E. 82], and Plaintiff National Specialty Insurance Company's Supplemental Briefing to its Motion for Summary Judgment [D.E. 85].

**THE COURT** has considered the motions, the relevant portions of the record, and is otherwise fully advised in the premises. For the reasons set forth below; Defendant Audrey Martin–Vegue's Motion for Partial Summary Judgment on Count II [D.E. 43] is denied, and Plaintiff's Motion for Summary Judgment [D.E. 45] is granted.

## I. BACKGROUND

This is a declaratory judgment action in which Plaintiff National Specialty Insurance Company ("NSIC") seeks the Court's determination of whether it has the duty to defend ABS Freight Transportation, Inc. and Andrii Plys in underlying proceedings known as *Audrey Martin–Vegue v. Andrii Plys, ABS Transport, Inc. ("Transport"), and ABS Freight Transportation, Inc. ("Freight")*, Case No. 12–2152 CA, pending in the Nineteenth Judicial Circuit in and for Martin County, Florida. Specifically whether policy number TFM 500980 issued to Defendant ABS Freight Transportation, Inc. ("Freight"), a motor carrier, provides liability insurance coverage to ABS Transport, Inc. ("Transport"), Andrii Plys ("Mr. Plys") and Deen LLC ("Deen") for a motor vehicle accident that occurred on November 29, 2012. The accident resulted in the death of Audrey Martin–Vegue's husband, Howard Martin–Vegue. Plaintiff also seeks a separate declaration that it does not have any duties or obligations under the MCS–90 endorsement that is part of policy number TFM 500980.

The parties filed cross motions for summary judgment. The Johnson and Chapman Defendants are parties to underlying actions arising from the same accident and by motion join and adopt Defendant Audrey Martin–Vegue's Motion for Partial Summary Judgment ("Defendants").

## II. FINDINGS OF FACT

NSIC issued and delivered an auto policy to Freight for the period January 30, 2012 to January 30, 2013 ("Freight Policy"). The Freight Policy provided $1 million combined-single limit liability coverage according to the terms and conditions of the policy. NSIC also issued a similar auto insurance policy to ABS Transport, Inc. ("Transport") ("Transport Policy").

On November 29, 2012, while driving a tractor-trailer for Transport, Mr. Plys collided with a vehicle driven by Howard Martin–Vegue in Martin County, Florida. Several subsequent collisions involving other vehicles took place. At the time of the accident, Mr. Plys was hauling Mexican Beach Pebbles previously picked up from Blue Daisy Cement Products, Inc. ("Blue Daisy") in Gardena, California, and was enroute to Pebble Junction in Delray Beach, Florida.

The tractor, driver and trailer involved in the accident were leased by Transport. Specifically, Transport leased the tractor and driver from Deen LLC ("Deen"), an independent owner-operator. Transport also had lease agreement to use the trailer from Freight. Notwithstanding the lease agreements, at the time of the accident, Transport was operating under its U.S. D.O.T. authority as the motor carrier. Further, Transport's name and its U.S. D.O.T. number were displayed on the tractor. At the time of the accident, Mr. Plys was an employee of Deen, and an independent contractor driver for Transport. Freight never employed Mr. Plys, and Mr. Plys was not an independent contractor driver for Freight.

Although the owners of Transport and Freight were once married, they subsequently divorced. After separation, but prior to their divorce, Ms. Mangarova, who previously worked for Freight, began Transport. Although their respective companies had similar names, and a lease agreement for equipment, each operated independently as separate trucking companies. Moreover, each company held a separate auto insurance policy from NSIC.

## III. LAW & DISCUSSION

### A. Legal Standard

■ Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). "Summary judgment is particularly suited for cases of insurance coverage because the interpretation of a written contract is a matter of law to be decided by the court." *Int'l Ship Repair & Marine Servs., Inc. v. N. Assur. Co. of Am.,* 2011 WL 5877505 at *4 (M.D.Fla. Nov. 23, 2011).

The moving party has the burden of production. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The movant meets this burden by showing that there is an "absence of evidence to support the non-moving party's case." *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir.1995). When the moving party has met this burden by offering sufficient evidence to support the motion, the party opposing must then respond by attempting to establish the existence of a genuine issue of material fact. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598.

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The Court must also determine whether the dispute about a material fact is indeed genuine. "Where the record taken as a whole would not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" and the court may grant the motion for summary judgment. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). If however, reasonable minds could disagree on the inferences arising from the material facts, then the Court must deny the motion for summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In other words, is the "evidence . . . such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. *See Marine Coatings of Alabama, Inc. v. United States,* 932 F.2d 1370, 1375 (11th Cir.1991) (dispute of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party). Finally, a party cannot defeat a motion for summary judgment by resting on the conclusory allegations in the pleadings. *See* Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

## B. Legal Analysis

### 1. Preliminary considerations

A federal court sitting in diversity must look to the forum states choice-of-law rules to determine the law applicable to the action. Here, the parties agree, Illinois law governs the Freight Policy.

▮ Under Illinois law, an insurance policy must be "construed as a whole giving effect to every provision." *West American Insurance Co. v. Yorkville National Bank,* 238 Ill.2d 177, 345 Ill.Dec. 445, 939 N.E.2d 288, 293 (2010). "Unambiguous words in the policy are to be given their plain, ordinary and popular meaning." *Id.* Additionally, under Illinois law, the duty to defend is determined solely by comparing the allegations of the complaint to the policy language. *Outboard Marine Corp. v. Liberty Mutual Ins. Co.,* 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204, 1212 (1992). The duty to indemnify arises only if the insured's activity and the resulting loss or damage actually falls within the policy's coverage. *Id.,* 180 Ill.Dec. 691, 607 N.E.2d at 1221.

Federal law governs the interpretation of the MCS–90 endorsement attached to the Freight Policy. *See Armstrong v. United States Fire Ins. Co.,* 606 F.Supp.2d 794, 820 (E.D.Tenn.2009); *Carolina Cas. Ins. Co. v. Yeates,* 584 F.3d 868, 875 (10th Cir.2009); *Canal Ins. Co. v. Distribution Services,* 320 F.3d 488, 492 (4th Cir.2003).

### 2. Plaintiff's Motion for Summary Judgment

NSIC seeks summary judgment declaring that NSIC has no duty to defend, and no duty to indemnify, Defendants ABS Transport, Inc., Deen, LLC, and Andrii Plys under the Freight Policy for any claims or suits arising out of a November 29, 2012 motor vehicle accident ("Underlying Accident"). NSIC also seeks summary judgment declaring that the MCS–90 endorsement attached to the Freight Policy does not apply to the Underlying Accident.

### a. Insureds Under the Freight Policy

▮ Freight asserts that it has no duty to defend Defendants Transport, Deen, and Mr. Plys under the Freight Policy for any claims or suits brought by any person or entity arising out of the Underlying Accident because Defendants are not insureds under the Freight Policy. [D.E. 45]. Specifically, Freight contends that

because Transport leased the trailer from Freight, used in a business other than Freight's, Transport, Mr. Plys and Deen are not "insureds" under the Freight Policy. Conversely, Defendants maintain that Freight was the for-hire motor carrier at the time of the Underlying Accident, and that Mr. Plys was acting within the scope of his employment or agency with Freight, thereby making Freight liable for his negligence. Additionally, Defendants assert that there was no valid lease agreement between Transport and Freight at the time of the Underlying Accident.

The Freight Policy has the following pertinent language:

Section II—Liability Coverage, paragraph A.1., Who Is An Insured is amended to read as follows:

1. Who Is An Insured

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your express or implied permission a covered "auto" you own, hire or borrow. However, none of the following are "insureds" under this subparagraph:

(1). The owner or anyone else from whom you lease, rent, hire or borrow a covered private passenger "auto".

(2). Your "employee" or agent if the coverage "auto" is a "private passenger type" "auto" and is owned by that "employee or agent or a member of his or her household.

(3). Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4). Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), for a covered "private passen-ger type" "auto" owned by him or her or a member of his or her household.

(5). A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "private passenger type" "auto" owned by him or her or a member of his or her household.

(6). If you are in the business of leasing "autos" to others, any lessee or employee or agent of the lessee.

(7). Anyone who has leased, hired, rented, or borrowed an "auto" from you that is used in a business other than yours.

(8). Anyone that is using an "auto" of yours under a written lease or trailer interchange agreement.

\*       \*       \*

[D.E. 1–16].

The record shows that the trailer involved in the Underlying Accident was leased from Freight to Transport, for business other than Freight's. [D.E. 45–1, 45–2, 85–1, 85–3, p. 58–60]. On October 15, 2012, Transport entered into a lease agreement with Freight. The lease agreement included the trailer involved in the Underlying Accident. [D.E. 45–2, 85–1, p. 87–88]. Moreover, the driver was also leased by Transport. The driver, Mr. Plys, worked as an independent contract driver for, and was engaged through, Deen to drive for Transport. [D.E. 45–2, 85–1, p. 93]. Deen also owned the tractor leased to Transport by written agreement. *Id.* Mr. Plys never worked for or drove for Freight. [D.E. 45–3, 45–1, 85–3, p. 67–68]. Although owned by Deen, the tractor displayed Transport's placard and U.S. DOT number. [D.E. 85–1, p. 117–118].

Additionally, the record shows that, at the time of the accident, Mr. Plys was conducting the business of Transport, not Freight. Specifically, Transport, not

Freight, was the motor carrier for hire. [D.E. 85–1, p. 109–111, 117]. Transport entered into an agreement with transportation broker, International Commodity Carriers Inc. ("ICCI") to deliver the pebbles to Florida. Moreover, ICCI's Confirmation of Contract Carrier Verbal Rate Agreement ("Confirmation Contract") and Carrier Pickup & Delivery Schedule ("Carrier Schedule") was addressed to Alek@abstransport.com. Alek, identified as Aleksander Stojchavski, was the dispatcher that accepted the terms of delivery with ICCI. Alek, was an employee of Transport, not Freight. [D.E. 45–2, 45–3, 85–3, p. 67–68]. Further, the Confirmation Contract also shows that the driver of the load was "Andrii [Plys]." Again, Mr. Plys drove for Transport, not Freight. Finally, Andrii Plys signed the bill of lading indicating that he received the pebbles from Blue Daisy for shipment. [D.E. 45–2, Exhibit E].

After the accident, Ms. Mangarova, owner of Transport, communicated with ICCI regarding the reduction in price for the late delivery of the load and damages to same. [D.E. 45–2]. Transport never submitted the signed bill of lading or sought payment from ICCI for the load at issue in this case. [D.E. 45–2]. However, ICCI also never paid Freight for hauling the load involved in the accident. [D.E. 85–3, p. 73]. According to Ms. Laura Reed, Vice President of operations for ICCI, if Transport submits the bill of lading and requests payment, ICCI would pay Transport.

Defendants assert that it "appears that the [trailer] lease was not in effect at the time of the accident and was created only after the accident." [D.E. 51, p. 12; see also D.E. 56, p. 5]. Defendants base this claim upon the fact that on October 15, 2012, the time Ms. Mangarova signed the lease agreement between Transport and Freight using her maiden name "Manga-

rova," she was still married to Mr. Bojkovski. Defendants reason that Ms. Mangarova would not have signed her maiden name on the lease at that time, but rather would have signed "Bojkovski." Defendants speculate that because she signed "Mangarova," the agreement is a post-dated document and was not in effect at the time of the accident. The Court finds this argument without merit. According to Ms. Mangarova, at the time she signed the lease agreement as "Kristinia Mangarova," she was separated from her husband. [D.E. 85–1, p. 115]. Ms. Mangarova further asserts that, although now divorced, even when married, she would routinely sign her name "Kristinia Mangarova." *Id.* The Court rejects Defendants' contention that the Equipment Lease Agreement between Transport and Freight was invalid at the time of Underlying Accident because it lacks any factual support.

Additionally, Defendant Martin–Vegue claims that it was Freight, not Transport, who contracted with ICCI and was therefore the motor carrier for-hire at the time of the accident. Defendant bases this claim on the fact that Freight's fax number and other identifying information appears on the Carrier Contract and Carrier Schedule. Moreover, at the time of the accident, only Freight, not Transport had a written agreement with ICCI. Transport did not enter into an agreement with ICCI until December 2012, after the accident.

Even assuming arguendo that Freight contracted with ICCI but Transport was the actual carrier of the goods, Transport, not Freight is the carrier for-hire. According to Ms. Reed, similar situations, where the party who contracted with ICCI to haul a load is not the actual carrier, is addressed, by specific provision, in both their Rate Confirmation Agreement and Broker Carrier Agreement. [D.E. 85–2, p.

42]. Specifically, if the contract carrier breaches the provision, allowing another carrier to haul the shipment, ICCI has the right to pay the money owed the contract carrier directly to the carrier that hauled the load, so long as that motor carrier meets ICCI's requirements. [D.E. 85–2, p. 43]. ICCI requires that the hauling carrier have the authority to haul the load, sufficient insurance, and enters into an agreement with ICCI. [D.E. 85–2, p. 44]. The record evidence is that Transport met all of ICCI's requirements. Transport, not Freight, has the legal right to receive payment if the signed bill of lading is submitted and payment requested from ICCI. The Court therefore finds the issue of ICCI's pre-haul documents, containing Freight's identifying information, immaterial as they are not determinative of who was the actual motor carrier for-hire at the time of the accident.

Additionally, contrary to Defendant Martin–Vegue's unsupported assertions, there is no record evidence that a joint venture existed between Freight and Transport, or that Transport is the corporate alter-ego of Freight. Both Mr. Bojkovski and Ms. Mangarova aver that, other than the presence of its trailer, Freight had nothing to do with the November 29, 2012 accident. [D.E. 45–1, 45–2]. Moreover, as previously noted, although operating under similar names, the record evidence shows that Freight and Transport are separate trucking companies. [D.E. 45–1, 45–2].

Based on the record evidence, the Court finds Transport, not Freight, was the motor carrier for-hire at the time of the accident. Further, there was a valid lease agreement between Freight and Transport at the time of the accident. Specifically, at the time of the accident, the tractor and driver was leased under the agreement with Deen, while the trailer was leased to Transport under the Equipment Lease Agreement with Freight.

The Court, giving a plain meaning to the unambiguous language of Freight's Policy, finds that subparagraph (7) excludes Transport as an "insured," while subparagraph (8) excludes Mr. Plys as an "insured." The Court further finds that NSIC has no duty to defend, and no duty to indemnify, Defendants ABS Transport, Inc., Deen, LLC, and Andrii Plys under the Freight Policy for any claims or suits arising out of a November 29, 2012 motor vehicle accident. Therefore, summary judgment is granted in favor of Plaintiff, NSIC, and against Defendants as to Count I.

#### b. The MCS–90 Endorsement

NSIC asserts that it is entitled to summary judgment declaring that it has no obligation to pay under the MCS–90 endorsement on behalf of Defendants Freight, Transport, Deen, and Mr. Plys because the MCS–90 endorsement does not apply to the Underlying Accident. [D.E. 45]. Specifically, NSIC contends that because the Freight Policy has $1 million in insurance coverage, the MCS–90 endorsement is inapplicable. Defendant Audrey Martin–Vegue agrees with this averment. [D.E. 51, p. 9].

Defendants, however, contend that the Motor Carrier Act requires NSIC, through the MCS–90 endorsement, to pay any judgment recovered against Freight, if Freight has public liability resulting from the negligent use of its trailer for compensation. The Court rejects this argument. First, there has been no final judgment entered against Freight in the underlying action. This argument is therefore premature on its face. Second, having found that Transport, not Freight was the motor carrier for-hire at the time of the Underlying Accident, there is no record evidence that supports Defendant's assertion that

Freight used its trailer for compensation. Further, having found the Freight policy inapplicable to Transport or Mr. Plys, it reasons that any endorsement to the Freight Policy also would not apply to the Underlying Accident. Accordingly, summary Judgment is granted in favor of Plaintiff and against Defendants as to Count II.

### 3. Defendant's Motion for Partial Summary Judgment

Audrey Martin–Vegue moves for summary judgment with respect to Count II, and seeks and entry of an Order declaring that the MCS–90 endorsement to the Freight policy covers her claim arising out of the subject accident. Specifically, Defendant Martin–Vegue contends that Freight, not ABS Transport, was hired to transport the load from California to Delray Beach, Florida. Moreover, Defendant Martin–Vegue argues that the Court should find that coverage is owed by NSIC under the policy it issued to Freight and grant judgment in her favor on Count II. Again, having found that Transport was the motor carrier for-hire at the time of the accident, and for the reasons discussed above regarding the inapplicability of the MCS–90 endorsement, Defendant Martin–Vegue's Motion for Partial Summary Judgment as to Count II is denied.

### IV. CONCLUSION

Based on the foregoing, as previously stated, it is hereby

**ORDERED AND ADJUDGED** that Defendant Audrey Martin–Vegue's Motion for Partial Summary Judgment on Count II [D.E. 43] is **DENIED.** It is further

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment [D.E. 45] is **GRANTED.** Judgment is entered in favor of Plaintiff and against Defendants as to Count I and Count II. It is further

**ORDERED AND ADJUDGED** that this case is **CLOSED** and all pending motions not addressed by this Order are **DENIED** as moot.